UNITED STATES *v.* WALLAMET VAL. & C. M. WAGON-ROAD CO. *et al.*

*(Circuit Court, D. Oregon. May 12, 1890.)*

LAND GRANT—WAGON-ROADS, COMPLETION OF—STALE CLAIM—ESTOPPEL—BONA FIDE PURCHASER.

In 1866 congress made a grant of lands to the state of Oregon, to aid in the construction of a wagon-road from Albany through the Cascade mountains to the eastern boundary of the state, and provided that the land might be sold as the work progressed, on the certificate of the governor of the state, that the portion of the same coterminous with said land was complete. The state transferred the grant, without further condition or qualification, to the Wallamet Valley & Cascade Mountain Wagon-Road Company, which undertook the construction of the road; and, within the five years allowed therefor, procured certificates from the governors of the state that the road was completed as required by law. Soon after, the company sold the lands to the defendants Weill and Cahn, who are now the legal owners thereof, except a small portion which has been disposed of. In 1874 congress authorized the issue of patents for these lands to the state or its assignee, when it was shown by the certificates of the governor that said road was "constructed and completed." Between 1878 and 1883 a question was made before the department of the interior whether the company had completed the road according to law, and testimony was received thereon, *pro* and *con,* and, after argument, the secretary of the interior directed patents to issue to the company, which was done on October 30, 1882, for 440,856 acres, in addition to a patent for 107,893 acres, issued on June 19, 1876. In consequence of this action by the secretary, the defendants believed that the due construction of the road was admitted by the complainant, and were thereby induced to expend a large sum of money on and about said property. In 1889, congress passed an act requiring the attorney general to bring a suit in this court against all persons claiming an interest in this grant, to determine the question of construction of the road, the legal effect of the governor's certificates, the right of the United States to resume the grant, and to obtain judgment declaring the land coterminous with any uncompleted portions of the road forfeited, saving the rights of any *bona fide* purchasers; the suit to be tried and adjudicated like other suits in equity. On August 29, 1889, in pursuance of this authority, this suit was commenced to obtain the relief therein specified. The defendants Weill and Cahn filed two pleas to the bill, in one of which they set up the foregoing facts as an estoppel, and in the other the defense of a *bona fide* purchase for a valuable consideration, and without notice of any failure on the part of the company to comply with the terms and conditions of the grant. *Held,* (1) that this suit must be tried as a suit between private persons, in which the defendants may set up any defense, including estoppel, and the statute of limitations, that they could if the complainant was merely a private person; (2) that the claim of the complainant to set aside these patents, and declare these lands forfeited, is, under these circumstances, a stale one, and therefore ought not to be allowed; (3) that the complainant, by the passage of the act of 1874, either accepted the certificates' as conclusive evidence of the due construction of the road, or thereby waived all further performance of the condition on which the grant was made; (4) that the complainant, by the action of its executive department in issuing the patent of 1882, impliedly recognized and accepted the performance of such condition, and, having thereby induced the defendants to change their relation to said property, by expending a large sum of money thereon and thereabout, is now estopped to allege or claim that said condition was not performed; (5) that the certificate of the governor of Oregon was made, by the act of 1866, the only evidence of the compliance with the terms of the grant by the completion of the road; (6) that, upon the facts stated in the plea, the defendants are purchasers in good faith, and for a valuable consideration, within the saving clause of the act of 1889, and within the general principles of

equity jurisprudence; and (7) that, on the case made by the bill and first plea thereto, it appears that the complainant ought not to prevail in this suit, and therefore it is dismissed.

(*Syllabus by the Court.*)

In Equity.

Mr. *Lewis L. McArthur*, for the United States.

Mr. *John A. Stanley*, Mr. *C. E. S. Wood*, and Mr. *Henry Ach*, for defendants.

DEADY, J.    By the act of July 5, 1866, (14 St. 89,) congress made a grant to the state of Oregon, to aid in the construction of a military wagon-road from Albany to the eastern boundary of the state, of the odd sections of the public lands, equal to three sections per mile of said road, to be selected within six miles thereof, together with the right of way for the same.    The legislature of the state was authorized to dispose of the lands for the construction of the road, as the work progressed, and the governor of the state certified "to the secretary of the interior" that any 10 miles of the same was completed.    If the road was not completed within five years, no further sales were to be made, and the land remaining unsold should "revert" to the United States.    The act also provided that the road should be constructed with such "width, graduation, and bridges, as to permit of its regular use as a wagon-road," and in such other "special manner" as the state might prescribe; and that the road should remain a public highway for the use of the government of the United States.

On October 24, 1866, the legislature of the state granted to the Wallamet Valley & Cascade Mountain Wagon-Road Company, hereinafter called the "wagon-road company," a corporation theretofore formed, under the general laws of Oregon, for the purpose of constructing and maintaining a wagon-road from Albany across the Cascade mountains to the Deschutes river, "all lands, right of way, rights, privileges, and immunities," theretofore granted to the state "for the purpose of aiding said company" in constructing the road described in the act of congress, "upon the conditions and limitations therein prescribed."    Sess. Laws, 58.

Between April 11, 1868, and June 24, 1871, both inclusive, there were issued by the governors of Oregon, and duly filed with the secretary of the interior, four certificates, which, taken collectively, showed that the road had been completed according to the acts of congress, and of the legislative assembly, to the eastern boundary of the state,—a distance of 448.7 miles.

On June 18, 1874, congress passed "An act to authorize the issue of patents for lands granted to the state of Oregon in certain cases," (18 St. 80,) which reads as follows:

"Whereas, certain lands have heretofore, by acts of congress, been granted to the state of Oregon to aid in the construction of certain military wagon-roads in said state, and there exists no law providing for the issue of formal patents for said lands, therefore be it enacted    *    *    *    that, in all cases where the roads, in aid of the construction of which said lands were granted, are shown by the certificate of the governor of the state of Oregon, as in said

acts provided, to have been constructed and completed, patents for said lands shall issue in due form to the state of Oregon, as fast as the same shall, under said grants, be selected and certified, unless the state of Oregon shall, by public act, have transferred its interests in said lands to any corporation or corporations, in which case the patents shall issue from the general land-office to such corporation or corporations upon the payment of the necessary expenses thereof: provided, that this shall not be construed to revive any land grant already expired, nor to create any new rights of any kind, except to provide for issuing patents to lands to which the state is already entitled."

On June 19, 1876, and October 30, 1882, patents were issued to the wagon-road company, under the act of 1874, the first one for 107,893 acres, and the second one for 440,856 acres, since which no patent has been issued for any portion of the grant.

On June 6, 1881, the secretary of the interior, in a communication addressed to the speaker of the house of representatives, estimated that the company is entitled, under the grant, to 1,346 sections of land, or 861,440 acres.

On March 2, 1889, congress passed an act making it the duty of the attorney general to cause a suit to be brought against all persons or corporations claiming an interest in the wagon-road grants made to the state of Oregon, including the one made by the act of 1866—

"To determine the questions of the seasonable and proper completion of said roads, in accordance with the terms of the granting acts, either in whole or in part; the legal effect of the several certificates of the governors of the state of Oregon of the completion of said roads; and the right of resumption of such granted lands by the United States; and to obtain judgment, which the court is hereby authorized to render, declaring forfeited to the United States all of such lands as are coterminous with the part or parts of either of said wagon-roads, which were not constructed in accordance with the requirements of the granting acts; and setting aside patents which have issued for any such lands; saving and preserving the rights of all *bona fide* purchasers of either of said grants or any portion of said grants, for a valuable consideration, if any such there be. Said suit or suits shall be tried and adjudicated in like manner, and by the same principles and rules of jurisprudence, as other suits in equity are therein tried."

The act also provides, among other things, for the disposition of the lands, in case the same are declared forfeited by the final determination of said suit.

In pursuance of this act, this suit was commenced by the attorney general, on August 29, 1889, on behalf of the United States against the wagon-road company and others, to have the lands included in the said grant forfeited to the United States, and the patents issued therefor, as well as the certificates of the governors of Oregon, concerning the construction of the road, declared fraudulent and void, on the ground and for the reason, as alleged, that the road never was "constructed and maintained" as required by law, either in whole or in part, so as to be a public highway, over which the property, troops, or mail of the United States could be transported; that the proceeds of said lands were not applied to the construction of the road; that the certificates of the governors are false, and were obtained on the false and fraudulent repre-

sentations of the wagon-road company, without examination on the part of said governors, and in one instance, that of September 8, 1870, with his knowledge that the same was false; all of which was known to the defendants at the time they acquired an interest in these lands.

The bill also shows that by sundry conveyances, commencing with that of the wagon-road company of August 19, 1871, to H. K. W. Clarke, and ending with that of Fred W. Clarke, the son of said H. K. W. Clarke, to Alexander Weill, of April 9, 1879, the title to said lands has become vested in the defendants Alexander Weill and David Cahn; and that T. Edgenton Hogg, and certain corporations of which he is an officer, made defendants in the bill, claim an interest in said lands.

The defendants Weill and Cahn, by leave of the court, have filed two pleas to the bill and their joint and several answers in support thereof.

The first plea may be called an estoppel.

Briefly, it alleges that, after these defendants had acquired the title to the lands in question, as stated in the bill, and in March, 1878, a complaint was received at the office of the secretary of the interior, to the effect that the road had not been constructed, as required by the act of July, 1866, in consequence of which the commissioner of the general land-office, with the approval of said secretary, appointed a special agent to examine the road and report thereon; that, in October, 1880, said agent reported that the road had not been constructed, as required by law; that said report, and the evidence accompanying the same, was laid before congress, and in the house of representatives was referred to the committee on military affairs, which committee, upon consideration of said report and evidence, and evidence contradictory thereof, made a report in February, 1881, recommending that no action of congress be had in the premises.

In their report the committee say they—

"Do not feel called upon to investigate the disputed question of fraud arising from the *ex parte* testimony submitted, or warranted in expressing an opinion in regard to the same, but believe that to be a matter within the province of the judicial and not the legislative department of the government."

And concludes as follows:

"(1) That the act of congress approved July 5, 1866, vested a present title to the land in question in the state of Oregon. (2) That, by the act of the legislature, and the acts of the governor of Oregon, the title to said land was vested in the Wallamet Valley & Cascade Mountain Wagon-Road Company. (3) That, by the deed of said company to Clarke, and the subsequent deeds from Clarke and others, the title of said land is now lawfully vested in the present claimant, Alexander Weill. (4) That said title cannot be forfeited or annulled or reinvested in the United States, excepting by a judicial proceeding, and that the same has become a vested right which congress cannot impair or take away."

That afterwards, on February 8, 1882, a communication from the secretary of the interior was laid before congress, containing further charges and alleged proofs that the road was not constructed as required by the act of July 5, 1866, and the matter was referred in the house of

representatives to the committee on public lands, and in the senate to the committee on military affairs, which committees reported, recommending that congress take no action in the premises. Both these reports are annexed to the plea, and made a part thereof, and each state that the title to this land passed to the state, and its assigns under the act of congress and the state legislature.

The senate committee says that "it is impossible" for them "to make such an investigation as will justify action by congress which would do justice and equity in the premises;" and that "the executive department of the government had ample authority, in law," to investigate the matter, and, if necessary, to institute legal proceedings in the courts of the United States to secure a forfeiture of the grant, or any part thereof, for failure to comply with the terms and conditions thereof, "without any legislation or instruction from the legislative department."

That, by the proceedings thus had, the matter of the completion of the road was referred to the executive department of the government, whereupon the secretary of the interior, after due investigation of the subject, including the hearing of argument thereon, did, on July 5, 1882, direct the commissioner of the general land-office to proceed and certify the lands for patent under the act of June 18, 1874, and thereafter, in October, 1882, said patent for 440,856 acres was duly issued to the wagon-road company; that these defendants, relying in good faith upon the action of the legislative and executive departments of the government, were induced to, and did, before the passage of the act of 1889, "so alter and change their position, in reference to said lands," as to—

"Render it inequitable and unconscionable for the complainant to assert any right * * * to forfeit or reclaim said lands; that these changes consist, in part, in the expenditure of $2,660.62 in securing the issue of patents therefor; in the payment of $29,875.79 of taxes levied thereon; in the payment of $109,800.97 to agents and attorneys for grading, selecting, and platting said lands, and defending the possession of the same from adverse claimants and trespassers, by the sale of sundry parcels of said lands with warranty of title, on which the liability of the defendants exceeds the sum of $22,609.71; in the expenditure of $86,805.75 in rebuilding and improving said road, through its entire length, which has greatly increased the value of the lands along the line thereof, a very large portion of which still belongs to the complainant, and in the payment of $31,651.71 interest on said sums of money, making in all the sum of $280,754.03."

In the second plea, these defendants aver that they are purchasers in good faith for a valuable consideration, and, in support thereof, allege in substance and effect that, in 1871, said lands were in the market for sale, when Weill and H. K. W. Clarke purchased the same of the wagon-road company, through their agent, T. Edgenton Hogg; that, in pursuance of said sale, the vendor conveyed the lands, on August 19, 1871, to said Clarke, who, on September 1st, of that year, conveyed the same to the defendant Cahn, in trust for Weill, Clarke, and Hogg; that, at this time, the greater portion of these lands were unsurveyed, and that, for the purpose of continuing the existence of the wagon-road company, and thereby securing the selection, and patenting of the lands, Weill and

Clarke, in the month of August, 1871, purchased the stock of said company, and, as a matter of convenience, some of said stock was bought in the name of Hogg, and by him held for Weill and Clarke, but said stock had no value apart from said land grant; that, at the time of the conveyance of said lands by the company, Weill had expended in the purchase thereof $140,636.39, and Clarke $20,000; that, at the time of said purchase, the several certificates of the governors of Oregon to the construction and completion of said road, as required by the act of July 5, 1866, were on file in the department of the interior, and the office of the secretary of state of Oregon; and these defendants then believed, and do still believe, that the same were altogether true, and never heard anything to the contrary, until 1880, when the attention of congress was called to the matter by the secretary of the interior; that, before purchasing the lands, Weill employed counsel learned in the law, who advised him that the title of the wagon-road company to the same was perfect, and that he had a right to rely on the certificates of the governors as conclusive evidence that the conditions of the grant had been duly performed; that, in making said purchase, he did so rely, and but for the existence of said certificates would not have made it; that, at the date of the purchase, these defendants were living in San Francisco and had never been in Oregon, except Cahn, who was there a short time in June, 1867, nor has either of them ever been there since; that, prior to said purchase, neither Hogg nor Clarke had any knowledge or information that these certificates were not true in point of fact, and if they or either of them was obtained by false or fraudulent means, neither of these defendants nor Hogg nor Clarke had any knowledge or information thereof; that, in 1879, Weill purchased all the interest of Hogg and Clarke in said lands, the same being 11-24 thereof, for $21,400, and the release to the former, and the estate of the latter, from the repayment to him of their proportions—amounting to many thousands of dollars—of the money advanced by him in the purchase of the lands, and received conveyances from them accordingly, as set forth in complainant's bill.

The answer in support of the plea avers that the price paid by Weill, on August 19, 1871, for the lands, was the full value thereof, and denies all knowledge or notice that the road had not then been duly constructed and completed, as required by the act of congress, or that the certificates of the governors were, in any respect, untrue or had been procured by false or fraudulent representations.

The case was heard on the sufficiency of the pleas, admitting the truth of the facts stated therein.

The act authorizing the bringing of this suit empowers the court to consider and determine these three questions, and no others:

(1) Was the road seasonably and properly completed, either in whole or in part, as provided in the act making the grant?

(2) What is the legal effect of the governors' certificates concerning the completion of the road? And

(3) What right has the United States to resume the granted lands? *U. S.* v. *Union Pac. R. Co.,* 98 U. S. 608.

In the determination of these questions, the court is required, by the act of 1889, to proceed "in like manner," and be governed "by the same principles and rules of jurisprudence," as in other suits in equity,—that is, as in suits between private individuals. And such is the rule of procedure and adjudication in the case, independent of the directions of the statute.

When the United States comes into court of equity to assert a claim, it is subject and must submit to the rules of procedure and principles of jurisprudence which obtain in suits between private parties. *U. S.* v. *Arredondo*, 6 Pet. 711; *U. S.* v. *Flint*, 4 Sawy. 58; *U. S.* v. *Tichenor*, 8 Sawy. 156, 12 Fed. Rep. 449.

The grant of 1866 was a grant *in præsenti*. The language of the act is: "That there be and hereby is granted to the state of Oregon." As soon as the line of the road was designated, the grant attached to the odd numbered sections, within the prescribed limits, on either side of said line, and took effect from the date thereof. *Cahn* v. *Barnes*, 7 Sawy. 53, 5 Fed. Rep. 326; *Pengra* v. *Munz*, 12 Sawy. 238, 29 Fed. Rep. 830; *Schulenberg* v. *Harriman*, 21 Wall. 44; *Missouri, etc., Ry. Co.* v. *Kansas Pac. Ry. Co.*, 97 U. S. 491; *Van Wyck* v. *Knevals*, 106 U. S. 360, 1 Sup. Ct. Rep. 336.

The grant, however, was a conditional one, the condition being that the road should be completed, in the manner provided, within five years from the date of the act.

This was a condition subsequent, and, unless it was complied with, the complainant, as grantor, might, by proper legislation or judicial proceedings, have enforced the forfeiture of the grant on the account of such failure. But no one else could do so, and, unless the grantor does, the title remains unimpaired in the grantee.

*Schulenberg* v. *Harriman, supra,* 63.

As appears from the first plea, congress has repeatedly refused to declare the forfeiture of the grant, or take upon itself the investigation of the question whether the condition had been complied with or not. The attorney general has declined to institute judicial proceedings to that end, until required to do so by the act of 1889, which appears to have been passed on the memorial of the legislature of the state. It is also well understood that congress was influenced to the passage of the act by the desire of these defendants to have a speedy and complete determination of their rights in the premises.

On the facts stated in this plea, the demand made by this suit for the forfeiture of this grant, on the ground stated in the bill, is what is known in equity as a "stale claim," and therefore ought not to be allowed. The period prescribed for the construction of this road expired in July, 1871, full 18 years before the commencement of this suit. During all this time it was open to the complainant to bring this suit by its attorney general to have this grant declared forfeited on the grounds now stated in its bill. *U. S.* v. *Throckmorton*, 98 U. S. 70; *U. S.* v. *San Jacinto Tin Co.*, 125 U. S. 278, 8 Sup. Ct. Rep. 850.

This, in my judgment, is such a delay or lapse of time as renders the

claim stale, and constitutes, under the circumstances, a bar to the relief sought.

Lapse of time, particularly when coupled with possession, as in this case, is a defense in equity in cases not within the reach of the statute of limitation.  Story, Eq. Pl. § 813; 2 Story, Eq. Jur. § 1520; *U. S.* v. *Tichenor,* 8 Sawy. 156, 12 Fed. Rep. 449; *U. S.* v. *Beebee,* 4 McCrary, 12, 17 Fed. Rep. 36.

For seven years after the expiration of the time prescribed for the construction of the road, and filing of the certificates of the governors, in which its completion was formally and officially declared, nothing appears to have been said or suggested to the contrary by any one, when a trespasser on the lands made a complaint to the secretary of the interior, that the road had not been constructed according to law.  Investigation ensued, under the direction of the secretary, and the matter was submitted to congress, who referred it back to the executive department in 1882, where, after due consideration, patents were ordered issued to the company under the act of 1874, which was done as to the greater portion of the lands.

The statute of limitations does not ordinarily run against the United States.  But this suit is required, by the act of congress, to be tried and adjudicated as a suit between private parties, and therefore, in my judgment, the lapse of time, or the bar of the statute of limitations, is to have the same effect as in a suit between such parties.

Since 1878, the analogous action at law, to recover the possession of these lands, on account of a breach of the condition on which they were granted, would be barred in 10 years, and prior to that time in 20 years. And although the statute of limitations does not apply, *proprio vigore,* to suits in equity, yet, in cases like this, of concurrent jurisdiction at law, the court will apply the same limitation to one as the other.  *Hall* v. *Russell,* 3 Sawy. 515; *Manning* v. *Hayden,* 5 Sawy. 379.

No case has been cited from the supreme court in which it has been distinctly held that the defense of estoppel can be made against the national government.  But in many cases it is so assumed, even where the term is not used.

For instance, in *Clark* v. *U. S.,* 95 U. S. 543, it was held that a defense to a claim against the government for the use of a steam-boat, which involved bad faith on its part, could not be made.

In *Branson* v. *Wirth,* 17 Wall. 39, it is assumed, in the opinion of the court, that the United States may be estopped.

In *U. S.* v. *McLaughlin,* 12 Sawy. 200, 30 Fed. Rep. 147, it was said by Judge SAWYER: "That the law of estoppel in a proper case applies to the government."

In *Indiana* v. *Milk,* 11 Biss. 209, 11 Fed. Rep. 389, the court having found that the state by its conduct had recognized the validity of the defendants' title, and thereby induced them to alter their position by investing their money on the strength of it, Judge GRESHAM said:

"The state cannot now in fairness or law assert its invalidity.  Resolute good faith should characterize the conduct of states in their dealings with in-

dividuals, and there is no reason in morals or law that will exempt them from the doctrine of estoppel."

In my judgment, the complainant ought not, in fairness and justice, be allowed to assert, as against these defendants, that this road was not completed, as required by law, and claim a forfeiture of the grant on that ground.

In the first place, the certificates of the governors to the completion of the road are the acts of the agents of the complainant. By the express terms of the grant, the governor of the state was authorized and required to determine if, and when, the road was constructed, as provided therein; and his certificate to that effect is the necessary and only legal evidence of that fact.

On the faith of these certificates, the truth of which was then and for long after unquestioned, these defendants invested their money in these lands.

By this means, the complainant proclaimed to these defendants: This road has been constructed according to law. The condition on which this grant was made has been complied with, and the same has become absolute; and it ought not now to be heard to allege anything to the contrary, even if it should be true, to the prejudice or injury of those, who, like these defendants, have, in good faith, acted upon such representation as true.

In the second place, after the investigations in congress and the department of the interior, between the years of 1873 and 1882, concerning the effect and verity of these certificates, and the fact of the compliance by the wagon-road company with the conditions of the grant, the complainant practically affirmed the right of the company to the lands, and listed the same for patent, under the act of 1874, and actually issued such patent, for the greater portion of the grant, on the faith of all which these defendants were induced to materially change their position in relation to the property by expending large sums of money thereon and thereabout, including the payment of $29,885.79 taxes levied thereon by the authority of the state, and $86,805.75 disbursed in the repair and improvement of the road.

In addition to the grounds above stated, on which this estoppel ought to be allowed, as against the United States, there is the express provision in the act of 1889, to the effect that this suit shall be tried and adjudicated as a suit in equity between private individuals. This direction is without qualification or exception, and, in my judgment, includes the setting up of an estoppel, as well as any other procedure or defense known to equity practice or jurisprudence. By this provision the complainant consents in advance that an estoppel for conduct may be availed of against it in this suit.

And even admitting, what is denied by the plea, that their certificates are false in fact, and were procured by the fraud of the wagon-road company, and that these defendants had notice of the same when they made the purchase, and, therefore, the complainant is not estopped to show these facts in any litigation between it and them, in which they

may be pertinent and material, still, by the deliberate action of the complainant the inquiry has become immaterial.

Congress had the same right to waive the performance of the condition subsequent to the grant, as to make it in the first place.   When, therefore, congress decided by the act of 1874 that patents should issue for these lands, in case it was shown by the certificates of the governors of Oregon that the road was "constructed and completed," in effect, it thereby affirmed, for the purpose of the grant, the integrity and efficacy of said certificates, and accepted them as final and conclusive evidence of the performance of the terms and conditions of the grant, or waived the same.   Again, admitting that the complainant could, as a matter of fact, and notwithstanding the certificates to the contrary, show that the road was not completed in all respects according to law, and that these defendants had notice thereof, still, the complainant having subsequently investigated the question upon evidence taken *pro* and *con* thereon, and decided by and through its proper officers that the grantee, or its assignee, the wagon-road company, was entitled to a patent for the lands, under the act of 1874, either on the ground that the road had been sufficiently constructed, or that, under said act, the certificates were conclusive of that fact, in consequence of which these defendants made the expenditures, and incurred the liabilities, on and about the property, as above stated, the complainant would be estopped to show such failure or notice in this suit.

The second plea is also good.   All the elements of a *bona fide* purchase appear in the transaction.   The original grant passed the legal title to the state, which it transferred to the wagon-road company, who conveyed the same to these defendants.   Their grantor was not only the apparent, but the actual, owner of the property.   The purchase is alleged to have been made in good faith, and nothing appears to the contrary; and it was made for a valuable consideration,—$140,636.   It is a matter of common knowledge, of which the court may take notice, that, at the date of this purchase, the country along the greater portion of the line of this road was unsettled, and much of it occupied by or within the range of wild Indians.   Its value was purely speculative.   Neither had the purchasers any notice of any defect or flaw in the title of their grantor, or any failure on its part to comply with the condition of the grant.

But, on this point, the district attorney contends that the grant having been made by statute on a condition subsequent, the purchasers were bound to inquire and see that this condition was fulfilled, before they can claim to have purchased in good faith.   Admit this.   But how were they to ascertain whether the condition was fulfilled or not? In effect, the district attorney answers:   By a personal examination of the work on the ground.   This would be a very unsafe proceeding. The purchasers might think the work was all that the law required, and some judge or jury, before whom the question might be raised years afterwards, might think otherwise.   The only specific direction in the act on the subject is that the road shall be constructed so as "to permit

of its regular use as a wagon-road, and in such other special manner as the state of Oregon may prescribe." The state assigned the grant to the wagon-road company without prescribing any "special manner" in which the road should be constructed. It follows that the construction was only to be such as "to permit of its regular use as a wagon-road." Nothing could be more indefinite than this. Probably no two men in Oregon could have been found who would agree in all particulars as to what was necessary to constitute such a road.

The act provides for the sale of the lands as the work progresses in sections of not less that 10 continuous miles, on the certificate of the governor to the secretary of the interior that the same "are completed." No lands were in fact sold until the certificates were furnished of the completion of the whole road. But this is a matter of which the grantor cannot complain. The provision was intended solely for the benefit of the grantee, and could be waived, as it was.

The power to declare the road, or any portion thereof, not less than 10 miles, "completed," was thus vested in the governor. When his certificate to that effect was filed with the secretary of the interior, the fact of completion was established. And any one thereafter seeking to purchase the lands need go no further or seek elsewhere for information on this point.

And so, these defendants finding the evidence on file, as to the completion of the road, that authorized the sale of the lands, freed from all conditions thereabout, purchased the same in good faith, and for a valuable consideration.

On the facts stated in the plea, there can be but one conclusion in the premises,—that these defendants are *bona fide* purchasers, within the purview of the act of 1889, and the principles of equity jurisprudence on that subject; therefore they are not liable to have the lands so purchased by them declared forfeited to the United States, even if the certificates of the governors should prove false and fraudulent, of which there is no evidence beyond the formal allegations of the bill, unsupported by any specific statement showing wherein or how they are false or fraudulent.

The pleas are both sustained, and, in my judgment, the bill ought to be dismissed.

The facts stated in them are not only admitted for the purpose of this hearing, but they are manifestly true. The only exception to this statement is the denial of the falsity of the certificate, or, if they are false, notice to these defendants of that fact. That they ever had any such notice is extremely improbable under the circumstances. Naturally enough, a purchaser would rely on the certificates, and not travel hundreds of miles through an unsettled country to determine, by personal observation, a matter which the law made the governor the unqualified judge of, and which, as I have said, no two persons were likely to agree about.

Admitting that the falsity of the certificates may be shown in conjunction with notice to these defendants of that fact, the time which has elapsed

since the period for the construction of the road has expired, and the absence of any resident population along its line at that time, would render it extremely difficult to make any satisfactory proof on the subject. The company was not bound to do more than construct the road. Its maintenance was no part of the condition of the grant. If the state had constructed the road, it would no doubt have been left to the people who wanted the use of it to keep it in repair, as in the case of the other public roads.

The state assigned the grant to the wagon-road company without condition in this respect. Nor is it likely that any one would, at that day, have accepted the grant on the onerous and uncertain condition of keeping the road indefinitely in repair. The fact that the act authorized the land to be sold, freed from all conditions of course, as fast as the road was constructed, shows conclusively that the grant was not intended to be charged with the burden of maintaining the road through all time or at all. In the nature of things, in many places the road would soon deteriorate and disappear if not kept in repair. Snow and rain, floods, washouts, and slides must occur yearly on the line of this road, or some portion of it. Therefore it would be very difficult to show at this late day what was the character and quantity of work done in its construction. The persons employed on the work, who would be the best and almost the only witnesses on this point, are likely, in 20 or more years, to have died or disappeared.

These alone are probably sufficient reasons for dismissing this bill. But the conclusions reached on the first plea make it certain, in the judgment of this court, that the complainant cannot and ought not to prevail in this suit—*First*, because the claim is clearly a stale one, and also by analogy to the statute of limitations is barred by the lapse of time; *second*, because, by the act of 1874, it has either accepted the certificates as conclusive evidence of the due construction of the road, or thereby waived all further performance of the condition subsequent; and, *third*, by the action of its executive department prior to 1883, whereby it distinctly recognized and accepted the performance of such condition, and thereby induced these defendants to so alter their position in relation to the property that it would be unconscionable and unjust now to allege the contrary to their serious injury and prejudice.

As an authority applicable to this case generally, see *U. S.* v. *Dalles Military Road Co.*, 41 Fed. Rep. 493.

Let a decree be entered dismissing the bill as to these defendants.