### SUTTON MANUF'G CO. v. HUTCHINSON.

(Circuit Court of Appeals, Seventh Circuit. October 1, 1894.)

No. 159.

1. CORPORATIONS—INSOLVENCY—SALE OF ASSETS.

Although the property of a private corporation is not charged by law with any direct trust or specific lien in favor of general creditors, and although such a corporation, so long as it is in the active exercise of its functions, may, if not restrained by its charter or by statute, exercise as

full dominion and control over its property, having due regard to the objects of its creation, as an individual may exercise over his property, when it becomes insolvent, and has no purpose of continuing business, the power to sell, dispose of, and transfer its estate is not altogether without limitation.

**2. SAME—LIEN OF CREDITORS—TRUST.**

When a private corporation is dissolved, or becomes insolvent, and determines to discontinue the prosecution of business, its property is thereafter affected by an equitable lien or trust for the benefit of creditors. The duty, in such cases, of preserving it for creditors, rests upon the directors or officers to whom has been committed the authority to control and manage its affairs. Although such directors and officers are not technical trustees, they hold, in respect of the property under their control, a fiduciary relation to creditors; and necessarily, in the disposition of the property of an insolvent corporation, all creditors are equal in right, unless preference or priority has been legally given by statute or by the act of the corporation to particular creditors.

**3. SAME—DUTY TO SUSPEND BUSINESS.**

A corporation is not required, by any duty it owes to creditors, to suspend operations the moment it becomes financially embarrassed, or because it may be doubtful whether the objects of its creation can be attained by further effort upon its part. It is in the line of right and of duty when attempting, in good faith, by the exercise of its lawful powers and by the use of all legitimate means, to preserve its active existence, and thereby accomplish the objects for which it was created. In such a crisis in its affairs, and to those ends, it may accept financial assistance from one of its directors, and, by a mortgage upon its property, secure the payment of money then loaned or advanced by him, or in that mode protect him against liability then incurred in its behalf by him.

**4. SAME—DISTRIBUTION OF ASSETS—RIGHTS OF DIRECTORS.**

But when a corporation becomes insolvent, and intends not to prosecute its business, or does not expect to make further effort to accomplish the objects of its creation, its managing officers or directors come under a duty to distribute its property or its proceeds ratably among all creditors, having regard, of course, to valid liens or charges previously placed upon it. Their duty is "to act up to the end or design" for which the corporation was created (1 Bl. Comm. 480); and, when they can no longer do so, their function is to hold or distribute the property in their hands for the equal benefit of those entitled to it. Because of the existence of this duty in respect to a common fund in their hands to be administered, the law will not permit them, being creditors, to obtain any particular advantage for themselves to the prejudice of other creditors.

**5. SAME—MORTGAGE TO CREATE PREFERENCE—VALIDITY.**

Rev. St. Ind. 1881, §§ 4920, 4924 (Rev. St. 1894, §§ 6645, 6649), do not cover every case of an insolvent private corporation which mortgages its property to secure an antecedent debt due to one of its creditors. The statute was aimed at conveyances or assignments of property made with the intent to hinder, delay, or defraud creditors or other persons of their lawful demands. It leaves the question of the validity of a conveyance, not made with the forbidden intent, but simply for the purpose of preferring a particular creditor, to be solved by any general recognized principles that are applicable to such a case.

Appeal from the Circuit Court of the United States for the District of Indiana.

Suit by William B. Hutchinson, trustee under the assignment made by the Hopper Lumber & Manufacturing Company, against the Sutton Manufacturing Company, to set aside a mortgage. Complainant obtained a decree. Defendant appeals.

v.63F.no.4—32

Addison C. Harris and J. E. McCullough, for appellant.

John S. Duncan and Charles W. Smith, for appellee.

Before HARLAN, Circuit Justice, JENKINS, Circuit Judge, and BUNN, District Judge.

HARLAN, Circuit Justice. On the 25th day of July, 1891, in the forenoon, the Hopper Lumber & Manufacturing Company, a corporation of Indiana, filed for record a mortgage to the Sutton Manufacturing Company, a corporation of Michigan, covering the entire stock of the mortgagor company, and every article and thing in or about its lumber and coal yard and used in its business.

The mortgage was given to secure the payment of drafts of different amounts drawn at different times between May 21, 1891 and July 23, 1891 by the Hopper Lumber & Manufacturing Company on the Sutton Manufacturing Company. These drafts aggregated $18,000, and were accepted by the latter company solely for the accommodation of the drawer. They were all negotiated and transferred, but none of them had matured when the above mortgage was executed.

At the time the mortgage was given, the Hopper Lumber & Manufacturing Company was insolvent, its liabilities exceeding its assets by about $40,000. The fact of its insolvency was then known or ought to have been known to its president. who acknowledged the mortgage, and, it is to be presumed, was known or ought to have been known to his codirectors. And the record leaves no room to doubt that the grantor intended to suspend all further prosecution of its business immediately upon executing the mortgage.

During the afternoon of the same day the Hopper Lumber & Manufacturing Company executed and filed for record a deed of assignment conveying to William B. Hutchinson all its property of every kind and nature, in trust to be sold and disposed of by him; the proceeds, after paying the costs of the deed of assignment and the lawful expenses of executing the trust, to be applied ratably to creditors of the mortgagor company.

The deed of assignment purports upon its face to have been made because of the inability of the mortgagor company to meet the demands of its creditors.

At the date of the mortgage, James S. Hopper, Henry S. Hopper, and Fannie E. Hopper were the directors, James S. Hopper the president and treasurer, and Henry S. Hopper the secretary, of the mortgagor company; and James S. Hopper, Henry S. Hopper, and Benjamin F. Sutton were the directors, James S. Hopper the president, Benjamin F. Sutton the vice president, and Henry S. Hopper the secretary and treasurer, of the Sutton Manufacturing Company.

Of the 600 shares of the stock of the Hopper Lumber & Manufacturing Company of the par value of $25 each, James S. Hopper held at the time of executing the mortgage 510 shares, Henry S. Hopper 30 shares, Mrs. Elizabeth Sutton 40 shares, and Mrs. Fannie E. Hopper 20 shares; and of the 1,000 shares of the Sutton Manufacturing

Company of the par value of $25 each, Mrs. Sutton held 220 shares, Mrs. Fannie E. Hopper 259 shares, Benjamin F. Sutton 204 shares, Walter A. Hopper 120 shares, Henry S. Hopper 120 shares, Mary J. Adams 76 shares, and James S. Hopper 1 share.

James S. Hopper is the husband of Fannie E. Hopper, a daughter of Mrs. Elizabeth Sutton and a sister of Benjamin F. Sutton and Mary J. Adams. Walter A. Hopper and Henry S. Hopper are sons of James S. Hopper by a former wife, who was a sister of Fannie E. Hopper and a daughter of Elizabeth Sutton.

Some question was made in the pleadings whether the mortgage was in fact accepted before the filing for record of the deed of assignment to Hutchinson. While that point is not deemed vital in the case, it may be well to state that, in the answer of the Sutton Manufacturing Company to an amended bill of complaint, it is averred that at the time the mortgage was executed, "to wit, before 9 o'clock a. m. on the 25th day of July, 1891, the same was then and there unconditionally delivered, and all control over the same surrendered, by the Hopper Lumber & Manufacturing Company to Henry S. Hopper, the secretary and treasurer and financial agent and manager of the defendant, the Sutton Manufacturing Company, for the said defendant company. And as such officer, agent, and manager of said company, the said Henry S. Hopper, then and there acting for and on behalf of said defendant company, accepted the same, and had the same recorded at 9 o'clock a. m. of that day. And that as such officer, manager, and agent he had then and there full authority, for and on behalf of said company, to accept said mortgage for it and on its behalf." It thus appears that the mortgage was surrendered by the Hopper Lumber & Manufacturing Company, represented in part by Henry S. Hopper, a director and its secretary, to Henry S. Hopper, a director and the secretary, treasurer, financial agent, and manager of the Sutton Manufacturing Company; and, on behalf of the mortgagee company, he "then and there" accepted the mortgage from the mortgagor company, in part represented by himself as a director and stockholder. The active parties in this transaction do not seem to have been neglectful of any matter of form.

The present suit was brought by Hutchinson, as assignee under the deed of assignment, to obtain a decree declaring the mortgage void as to him and the general creditors, in which event the property embraced by it would belong to him for administration under that deed.

On the authority of Lippincott v. Carriage Co., 25 Fed. 577, and Howe v. Tool Co., 44 Fed. 231,—both of which cases were decided by Judge Woods,—the circuit court, the district judge presiding, entered a decree setting aside the mortgage.

We are of opinion that there was no error in the decree. It is quite true that the property of a private corporation is not charged by law with any direct trust or specific lien in favor of general creditors; and such a corporation, so long as it is in the active exercise of its functions, may, if not restrained by its charter or by statute,

exercise as full dominion and control over its property, having due regard to the objects of its creation, as an individual may exercise over his property. But when it becomes insolvent, and has no purpose of continuing business, the power to sell, dispose of, and transfer its estate is not altogether without limitation.

In Curran v. State, 15 How. 304, 307, the supreme court of the United States said that the assets of an insolvent banking corporation "are a fund for the payment of its debts. If they are held by the corporation itself, and so invested as to be subject to legal process, they may be levied on by such process. If they have been distributed among stockholders, or gone into the hands of other than bona fide creditors or purchasers, leaving debts of the corporation unpaid, such holders take the property charged with the trust in favor of creditors, which a court of equity will enforce, and compel the application of the property to the satisfaction of their debts. This has been often decided, and rests upon plain principles." So, in Drury v. Cross, 7 Wall. 299, 302, in which case it appeared that a corporation had conveyed its property so as to protect its directors against liability as indorsers for it, the court, in condemning the conduct of the directors, held that it was their duty "to administer the important matters committed to their charge for the benefit of all parties interested, and in securing an advantage to themselves not common to the other creditors they were guilty of a plain breach of trust." Subsequently, in Graham v. Railroad Co., 102 U. S. 148, 161, the court, after observing that a corporation, if not forbidden by its charter, could hold property as absolutely as an individual could hold property, and that its estate, interest, and possession were the same, said that:

"When a corporation becomes insolvent it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will then make those funds trust funds which, in other circumstances, are as much the absolute property of the corporation as any man's property is his."

And in Railway Co. v. Ham, 114 U. S. 587, 594, 5 Sup. Ct. 1081, the language of the court was:

"The property of a corporation is doubtless a trust fund for the payment of its debts, in the sense that when a corporation is lawfully dissolved and all its business wound up, or when it is insolvent, all its creditors are entitled in equity to have their debts paid out of the corporate property before any distribution thereof among the stockholders."

See, also, Koehler v. Iron Co., 2 Black, 715; Richardson's Ex'r v. Green, 133 U. S. 43, 44, 10 Sup. Ct. 280.

There is nothing in Hollins v. Iron Co., 150 U. S. 371, 382, 14 Sup. Ct. 127, to which appellant calls attention, that is at all inconsistent with these principles. On the contrary, the court, while reaffirming the doctrine that the property of a private corporation is not burdened with any specific lien or direct trust in favor of general creditors, observed that such a corporation, when it becomes insolvent, holds its assets subject to somewhat the same kind of equitable lien and trust in favor of its creditors that exist in favor of the cred-

itors of a partnership after becoming insolvent, and that in each case such lien and trust will be enforced by a court of equity in favor of creditors.

It is, we think, the result of the cases that when a private corporation is dissolved or becomes insolvent, and determines to discontinue the prosecution of business, its property is thereafter affected by an equitable lien or trust for the benefit of creditors. The duty in such cases of preserving it for creditors rests upon the directors or officers to whom has been committed the authority to control and manage its affairs. Although such directors and officers are not technical trustees, they hold, in respect of the property under their control, a fiduciary relation to creditors; and necessarily, in the disposition of the property of an insolvent corporation, all creditors are equal in right unless preference or priority has been legally given by statute or by the act of the corporation to particular creditors.

In what cases, where the subject is uncontrolled by legislation, can such preference or priority be legally given by a corporation? Undoubtedly a solvent corporation, if not forbidden by its charter, may mortgage its property to secure the performance of obligations assumed before or at the time of the execution of the mortgage. So, a mortgage executed by a corporation whose debts exceed its assets, to secure a liability incurred by it or on its behalf, will be sustained, if it appears to have been given in good faith to keep the corporation upon its feet and enable it to continue the prosecution of its business. A corporation is not required by any duty it owes to creditors to suspend operations the moment it becomes financially embarrassed, or because it may be doubtful whether the objects of its creation can be attained by further effort upon its part. It is in the line of right and of duty when attempting, in good faith, by the exercise of its lawful powers and by the use of all legitimate means, to preserve its active existence, and thereby accomplish the objects for which it was created. In such a crisis in its affairs, and to those ends, it may accept financial assistance from one of its directors, and by a mortgage upon its property secure the payment of money then loaned or advanced by him, or in that mode protect him against liability then incurred in its behalf by him. Of course, in cases of that kind, a court of equity will closely scrutinize the transaction, and, in a contest between general creditors and a director or managing officer who takes a mortgage upon its property, will hold the latter to clear proof that the mortgage was executed in good faith, and was not a device to enable him to obtain an advantage for himself over those interested in the distribution of the mortgagor's property. Richardson's Ex'r v. Green, 133 U. S. 30, 43, 10 Sup. Ct. 280; Oil Co. v. Marbury, 91 U. S. 587, 588.

Entirely different considerations come into view when an insolvent corporation, having no expectation of continuing its business, and recognizing its financial embarrassments as too serious to be overcome, mortgages its property to secure a debt previously incurred by one of its directors, or, in a general assignment of all of its property, gives him a preference. To a general assignment by a private corporation for the equal benefit of all its creditors, including directors, no

objection could be made, because it recognizes the equal right of creditors to participate in the distribution of the common fund. Such an assignment, Lord Ellenborough said in Pickstock v. Lyster, 3 Maule & S. 371, 375, is to be referred to an act of duty rather than of fraud, and is an act by the assignor that arises out of a discharge of the moral duties attached to his character of debtor to make the fund available for the whole body of creditors.

The contention of the defendants is that in disposing of their respective properties an individual and a corporation were recognized at common law as having equal rights; and as the former may, in the absence of a statute forbidding it, transfer the whole or part of his property with the intention or with the effect of giving a preference to some of his creditors to the exclusion of others, so an insolvent corporation, when financially embarrassed and not intending to continue its business, may make a preference among its creditors, whoever they may be, and whatever their relation to the corporation or to the property transferred. If this be a sound rule, it would follow that directors, being also creditors, of an insolvent corporation, which has abandoned the objects of its creation and ceased an active existence, may distribute among themselves its entire assets, if the reasonable value thereof does not exceed their aggregate demands. We cannot accept this view. In our judgment, when a corporation becomes insolvent and intends not to prosecute its business, or does not expect to make further effort to accomplish the objects of its creation, its managing officers or directors come under a duty to distribute its property or its proceeds ratably among all creditors, having regard of course to valid liens or charges previously placed upon it. Their duty is "to act up to the end or design" for which the corporation was created (1 Bl. Comm. 480), and when they can no longer do so their function is to hold or distribute the property in their hands for the equal benefit of those entitled to it. Because of the existence of this duty in respect to a common fund in their hands to be administered, the law will not permit them, although creditors, to obtain any peculiar advantage for themselves to the prejudice of other creditors. This rule is imperatively demanded by the principle that one who has the possession and control of property for the benefit of others—and surely an insolvent corporation, which has ceased to do business, holds its property for the benefit of creditors—may not dispose of it for his own special advantage to the injury of any of those for whom it is held. That principle pervades the entire law regulating the conduct of those who hold fiduciary relations to others, and, instead of being relaxed, should be rigidly enforced in cases of breach of duty or trust by corporate managers seeking to enrich themselves at the expense of those who have an interest equally with themselves in the property committed by law to their control. It would be difficult to overstate the mischievous results of a contrary rule, as applied to those intrusted with the management of corporate property.

As between an individual and those with whom he transacts business, there is no relation of trust or confidence in respect to

his property that affects his absolute right to dispose of it as to him seems fit. He is not bound to devote his property to any particular uses or to the discharge of any particular debts. But his entire estate, so far as it is not burdened by himself with liens or exempted by law from execution, may be reached by appropriate proceedings, and subjected to sale in satisfaction of his debts. If his property is insufficient at the time of his insolvency to discharge all his liabilities, unpaid creditors may abide their time, and, until their claims are barred by limitation, look to any property thereafter acquired by him. In short, every one contracts with an individual upon the basis of his absolute dominion over his property, except as its disposition when he becomes insolvent or contemplates insolvency may be restricted, as in many jurisdictions it is restricted, by express statute.

But the situation is wholly different in the case of a private corporation, whose property in the hands of its directors or managing agents is, by the law of its being, devoted to the special objects for which it was created. Because it is so devoted those who take it with notice that it is being applied to purposes foreign to the objects for which the corporation was established may be compelled, at the instance of proper parties, to surrender it or to account for its proceeds. Russell v. Waterworks Co., L. R. 20 Eq. 474, 479; Studdert v. Grosvenor, 33 Ch. Div. 528, 539, 540. Upon like grounds, equity will enjoin the managing agents of a corporation from using its funds for objects not germane to its authorized business; and as, in the absence of a statute prescribing a contrary rule, creditors of a private corporation cannot look for their security to the private estate either of the corporators or of those who manage its property, the only recourse of creditors, when a corporation is dissolved or becomes insolvent and ceases to prosecute its business, is the property in the hands of its managing officers. The law in effect says to all who deal with private corporations that they must look to its property as the only security for the fulfillment of its obligations; and, if the law gives this assurance to creditors of a corporation, those who are authorized to represent it in its dealings with the public, who control and manage its property, and upon whose fidelity and integrity the public as well as creditors rely, ought not to be permitted, when the corporation becomes insolvent and abandons the objects for which it was created, to appropriate to themselves as creditors any more of the common fund in their hands than is ratably their share. If, upon becoming insolvent, a corporation should invoke the aid of a court of equity for the distribution of its assets, creditors would be paid pari passu in ratable proportions. Those, therefore, who hold fiduciary relations to creditors, ought not to be allowed, by any form of proceeding, or by their own act, after the corporation is practically extinct, to appropriate its property for their special benefit, to the injury of those who, upon every principle of justice, have equal rights with themselves.

These views are fully supported by many well-considered cases in

addition to those decided by Judge Woods, and to which reference has been made. Some of them are named in the margin.[1]

The cases cited on behalf of the appellant have not been overlooked, but upon careful examination we are of opinion that most of them fall short of sustaining its contention. Be that as it may, we think the better reason is with the views we have expressed.

Among those upon which the appellant relies are Gould v. Railway Co., 52 Fed. 680, 681; Brown v. Furniture Co., 7 C. C. A. 225, 58 Fed. 286; Hills v. Furniture Co., 23 Fed. 432; Buell v. Buckingham, 16 Iowa, 284; Smith v. Skeary, 47 Conn. 53; and Holt v. Bennett, 146 Mass. 437, 16 N. E. 5.

Gould v. Railway Co. does not sustain the position of appellant. That case involved, among other things, the validity, as against the creditors of a railroad corporation, of a deed of trust executed as additional security to certain stockholders and directors who had previously advanced large sums for it, and for the repayment of which the company pledged as collateral security mortgage bonds known at the time to be inadequate as security. But it was the best security the company could then give. Subsequently it obtained a grant of lands from the State, and at a later date, 1884, the above deed of trust was given to secure the above loans or advances. Now, the company, when it made the deed of trust, had not abandoned, and did not intend to abandon, the prosecution of its business. Nor was it hopelessly insolvent. On the contrary, it appeared, and the fact is stated in the report of the case, that "at the date of the execution of the deed of trust the floating debt of the company was inconsiderable, and the company continued to be a going concern, and to own its road, until it was sold in 1887 under a decree foreclosing the mortgage given to secure its first-mortgage bonds." The general observations in the opinion in that case must, of course, be interpreted in the light of these facts, and the decision taken as being only that a corporation, although in failing circumstances, may, by mortgage, give a preference to some of its creditors, even to directors, if it be done in good faith to meet existing demands and to keep it "a going concern."

---

[1] Bradley v. Converse, 4 Cliff. 375, Fed. Cas. No. 1,776; Bradley v. Farwell, 1 Holmes, 433, 439, 443, Fed. Cas. No. 1,779; Corbett v. Woodward, 5 Sawy. 403, 417, Fed. Cas. No. 3,223; Adams v. Milling Co., 35 Fed. 433; Consolidated Tank-Line Co. v. Kansas City Varnish Co., 45 Fed. 7; Stout v. Milling Co., 4 McCrary, 488, 13 Fed. 802; Haywood v. Lumber Co., 64 Wis. 639, 26 N. W. 184; Olney v. Land Co., 16 R. I. 597, 599, 18 Atl. 181; Beach v. Miller, 130 Ill. 162, 22 N. E. 464; Roseboom v. Whittaker, 132 Ill. 81, 23 N. E. 339; Richards v. Insurance Co., 43 N. H. 264; Smith v. Putnam, 61 N. H. 632, 634; Corey v. Wadsworth (Ala.) 11 South. 350; Robins v. Embry, 1 Smedes & M. 207, 255; Coons v. Tome, 9 Fed. 534; Marr v. Bank, 4 Cold. 476, 477; Hopkins' Appeal, 90 Pa. St. 76; Sweeny v. Sugar-Refining Co., 30 W. Va. 433, 4 S. E. 431; Lowry Banking Co. v. Empire Lumber Co., 91 Ga. 624, 17 S. E. 968; Lyons-Thomas Hardware Co. v. Perry Stove Manuf'g Co., 86 Tex. 143, 24 S. W. 16; Roan v. Winn, 93 Mo. 503, 4 S. W. 736; Williams v. Jackson County Patrons, 23 Mo. App. 132. See, also, Improvement Co. v. Terrell, L. R. 10 Eq. 174; Green, Ultra Vires (2d Ed.) 477, 479; 2 Perry, Trusts (3d Ed.) § 904; 2 Mor. Priv. Corp. § 803.

Brown v. Furniture Co., which arose in the state of Michigan, was determined upon the authority of decisions in the supreme court of Michigan, particularly Bank of Montreal v. J. E. Potts Salt & Lumber Co., 90 Mich. 345, 51 N. W. 512. It was contended in that case that the court should reach a conclusion as upon a doctrine of general law, but it declined to do so, holding it to be its duty, when the matter was one of doubt, to lean towards the decisions of the State court. Hills v. Furniture Co. was also a Michigan case, and involved the validity of a mortgage to secure creditors, and to protect directors against liability arising from their indorsements for the company. It may be observed that the court, in the latter case, considering generally the right of the mortgagor company to give the mortgage there in question, quotes from the testimony of one of its officers, who, in describing the circumstances attending its execution, said: "We thought we could then, aided by the time thus obtained, go on and pay what we owed. We had no idea but what our debts would be paid."

Buell v. Buckingham involved the validity of a sale of property belonging to a private corporation to one of its directors, in discharge of its obligation to him. It is sufficient to observe, in reference to that case, as was done by Judge Woods in Lippincott v. Carriage Co., above cited, that in that case there was no evidence that the corporation was insolvent, or that the sale there in question embraced all its property. The case necessarily involved only the question whether the sale was void by reason alone of the fact that the purchaser was a director of the corporation that sold the property. Smith v. Skeary does not sustain the broad proposition that an insolvent corporation, which intends to discontinue altogether the prosecution of its business, may transfer its property to a director, being a creditor, to the exclusion of other creditors. That was a case in which directors of a corporation, who were also creditors, took personal property from it in discharge of their claim. But the transfer to them was in good faith, in the ordinary course of business, and in the honest belief on the part of directors that the corporation would be able to meet all its liabilities, although it appeared subsequently that the fact was otherwise. In Holt v. Bennett a creditor of a corporation disputed the validity of a mortgage made by it for the benefit of two of its directors. The court, among other things, said:

"The whole transaction is found to have been done in good faith, with the intent to put the corporation on a better footing to go on with its business and develop its patents, which were deemed to be valuable. * * * Even if, when this deed was made, the property of the corporation, outside of the value of the letters patent possessed by it, was insufficient to pay its debts in full, the process patented was honestly believed to be of great value, and indeed has since been made successful, although by another corporation. The position of the plaintiff appears to be that a corporation intending in good faith to proceed with its business, and to render the patents available which it possesses, cannot pay its directors money which it has borrowed from them in the ordinary course of business without rendering them responsible for the amount which they thus receive to any of its creditors whose debts may then be owing from it, although not then due and payable. This is quite untenable. The cases cited by the plaintiff which hold that where a corpora-

tion is insolvent it cannot make conveyances of its property in contemplation of such insolvency, for the security of its directors who are also its creditors, to the exclusion. of others, do not require examination or discussion. They have no relation to a case like that at bar. There was no reason why this corporation should not conduct its business in the ordinary manner, even if incidentally debts for borrowed money were paid to its directors; this being done fairly, and in its prosecution of the object for which it was formed."

It is clear that the Massachusetts case is not an authority in support of appellant's position, but looks the other way.

This question, so far as we are aware, has not been determined by the supreme court of Indiana, under whose laws the mortgagor company became a corporation. But the appellant insists that the case is covered by the statutes of Indiana, which provide:

"All conveyances or assignments, in writing or otherwise, of any estate in lands, or of goods, or things in action, every charge upon lands, goods or things in action, and all bonds, contracts, evidences of debt, judgments, decrees, made or suffered with the intent to hinder, delay, or defraud creditors or other persons of their lawful damages, forfeitures, debts, or demands, shall be void as to the persons sought to be defrauded." "The question of fraudulent intent, in all cases arising under the provisions of this act, shall be deemed a question of fact." Rev. St. Ind. 1881, §§ 4920, 4924 (Rev. St. 1894, §§ 6645, 6649).

Under this act it has been held that fraud in the disposition of property cannot be presumed, but must be averred and proved, and that an insolvent debtor may by mortgage give. a preference to some of his creditors, although he may at the time intend by another instrument, and at an early day thereafter, to make a general assignment, under the statute, of his property for the benefit of creditors. And this principle has been applied even where the preferred creditor was the wife of the debtor, the only proper inquiry in all such cases being whether the debt secured was a genuine one. Gilbert v. McCorkle, 110 Ind. 215, 11 N. E. 296; Dice v. Irvin, 110 Ind. 561, 11 N. E. 488; Fletcher v. Martin, 126 Ind. 55, 25 N. E. 886; Shillito Co. v. McConnell, 130 Ind. 41, 26 N. E. 832; Hutchinson v. Bank, 133 Ind. 271, 30 N. E. 952; Fuller v. Mehl, 134 Ind. 60, 33 N. E. 773.

In our judgment these cases have no application to the one now before us. The Indiana statute does not cover the whole subject of the conveyance or transfer of property in violation of the rights of others. It does not embrace every case of an insolvent private corporation which mortgages its property to secure an antecedent debt due to one of its directors. The statute was aimed at conveyances or assignments of property made with the intent to hinder, delay, or defraud creditors or other persons of their lawful rights or demands. A mortgage made in good faith, without intent to hinder, delay, or defraud other creditors, but for the sole purpose of preferring a particular creditor, is not prohibited. The statute does not take away the right to give such a preference where it could be lawfully done according to the principles of the common law. It leaves the question of the validity of a conveyance not made with the forbidden intent, but simply for the purpose of preferring a particular creditor, to be solved by any general, recognized principles

that are applicable to such a case. At common law even a general assignment by a debtor of his entire property for the benefit of all his creditors, although it interfered with the enforcement by the ordinary process of law of the demands of creditors, was not regarded as hindering or delaying creditors, within the meaning of the statutes against fraudulent conveyances. Reed v. McIntyre, 98 U. S. 507, 509 et seq., and authorities cited. So an assignment or mortgage which operates as a preference of a particular creditor is not in itself fraudulent, or a hindrance or delay, within the meaning of the Indiana statute, and its validity depends upon the nature and circumstances of the transaction. The case of an insolvent corporation, which has no purpose to continue in business, and which, in the distribution of its property, gives a preference to one of its directors, being also a creditor,—such preference being given with no intent to hinder, delay, or defraud other creditors,— is left untouched by the statute. The determination of such a case may depend altogether upon the fiduciary relation sustained by the directors to the property and to creditors, and the circumstances under which the preference was obtained. In other words, an assignment or mortgage by an insolvent corporation to one of its directors, being a creditor, may be invalid either upon the ground that it was made with the intent to hinder, delay, or defraud other creditors, or upon the ground that it was inconsistent with the fiduciary relations held by the director to the property or to creditors. If the first ground be not established,—that is, if the fact of the fraudulent intent is not proved,—it would not follow that the second would be overruled. No case has been cited indicating that the supreme court of Indiana has relaxed in any degree the salutary rule that forbids any one holding a trust fund to obtain by his own act, or by the act of those associated with him in such holding, any peculiar advantage for himself, to the prejudice of those interested equally with him in the distribution of such fund.

In the present case it appears that two of the directors of the insolvent mortgagor company owned nearly 400 out of the 1,000 shares of the stock of the mortgagee company. The mortgage therefore had the effect to protect their interests in the property of the latter corporation against the liability previously incurred by its accepting drafts drawn by the former, and to withdraw the property mortgaged from its primary liability for the debts of the mortgagor company. The case presented is consequently one in which an insolvent corporation, recognizing its inability to further prosecute its business, and with no hope of recovering from its financial embarrassments, gives a preference by mortgage of its property to some of its directors, being also creditors. According to the principles we have announced, this could not be rightfully done.

For the reasons we have given the judgment of the circuit court is affirmed.