WISCONSIN MARINE & FIRE INS. CO.'S BANK v. LEHIGH & F. COAL CO. (MOLSON'S BANK, INTERVENER.)

(Circuit Court, N. D. Illinois. November 5, 1894.)

1. INSOLVENT CORPORATION—UNLAWFUL PREFERENCE—WHAT CONSTITUTES.

The president of an insolvent corporation, whose tangible property was in the custody of the law, gave a bank the company's note, payable on demand, for a debt not due. Suit was commenced on it the next day. The company filed its appearance, pleaded the general issue, waived a jury, and consented to an immediate hearing. Execution was issued, and returned nulla bona, and on the same day the bank filed a creditor's bill. A director of the company was individually liable, as guarantor and otherwise, for the debt due such bank. *Held* an unlawful attempt to give the bank a preference over other creditors of such company.

2. SAME—DISTRIBUTION OF ASSETS—RIGHTS OF CREDITORS.

In the absence of any attack on the bona fides of the debt, and of any actual fraud in such proceeding, such bank was entitled to share ratably with all other creditors of such company in the distribution of its assets by a receiver.

Bill by the Wisconsin Marine & Fire Insurance Company's Bank against the Lehigh & Franklin Coal Company, in which the Molsons' Bank intervened. Complainant demurred to the intervening petition. Demurrer overruled.

O. E. More, for complainant.
Weigley, Bulkley & Gray, for receiver.
Peckham & Brown, for Molsons' Bank.
Chas. S. Miller, for defendant.

JENKINS, Circuit Judge. Treating the intervening petition as amended as proposed,—which I do not understand to be opposed,—the case stands thus: On the 17th of April, 1893, the Lehigh & Franklin Coal Company was wholly and entirely insolvent, had ceased to do business, and its property in the state of Wisconsin had during the preceding week been attached by creditors, of all of which the complainant had knowledge. The company was indebted to the complainant at that time; and on that date the president of the coal company executed a note, payable on demand, without grace, for $66,336.25, for an indebtedness not then matured. For the indebtedness to the bank one A. C. Yates, a director of the coal company, was personally and individually liable, the indebtedness being in the form of notes and drafts upon which Yates was maker, indorser, or guarantor, and was covered by a general guaranty running from Yates to the bank. The president of the coal company delivered the note to the solicitors of the coal company, who placed the same in the hands of an attorney, Mr. More, connected in business and occupying the same office with said solicitors. On the 18th of April, Mr. More commenced suit in this court upon such note in favor of the bank against the coal company. Contemporaneously therewith the coal company filed its appearance, pleaded the general issue, filed a stipulation waiving a trial by jury and consenting to an immediate hearing, and thereupon judgment was immediately en-

tered upon such note. On the same day a like judgment was entered in favor of the Globe National Bank in the state court, under which the sheriff took possession of all the tangible property of the coal company situated within the county of Cook. Execution upon the judgment in favor of the complainant was immediately issued, and immediately returned nulla bona. On the same day this creditors' bill was filed by the bank, the complainant, to subject the assets of the coal company to the payment of its judgment, and a receiver was immediately appointed with the consent of the coal company, which entered its immediate appearance in the suit. Under these proceedings there has been impounded a fund over and above all expense of the receivership aggregating $22,612.63. On the 11th of May, 1893, the Molsons' Bank, the intervening petitioner, obtained a judgment against the coal company in invitum for $7,101.54 and costs, and on the 13th of May, 1893, filed its intervening petition, which, with the proposed amendments, declared the facts stated, and asked that its judgment should be first paid out of the assets of the coal company, or that the funds should be distributed pro rata among the creditors of the coal company who may prove their claims in this proceeding. To this petition the bank, complainant, demurs.

I am of opinion that this case is ruled by Manufacturing Co. v. Hutchinson (lately decided by the court of appeals in this circuit) 63 Fed. 496. I cannot but regard the proceedings resulting in the judgment in favor of the bank, complainant, as an attempt to give a preference to its debt over the debts of the other creditors of the coal company, as surely so as if the president of the coal company had executed to the bank a mortgage of the property of the coal company. At that time the coal company was no longer a going concern. It had ceased to do business. Its tangible property was largely, if not wholly, in the custody of the officers of the law. The note to the bank, complainant, was given for a debt not then matured, and was made presently payable. It was given without authority of the board of directors. While the president of a going concern may have authority to execute obligations in behalf of his company in the usual conduct of its business while it is a going concern, when it ceases to do business, and has become bankrupt, such function of its president ceases, and he has no right, without authority of the board of directors, to usurp their function, and to grant preference at his pleasure to the creditors of his company. In such case his occupation is gone, except in respect to the care of the property in the interest of all the creditors of the company. The debt to the bank, complainant, according to the allegations of the intervening petition, was secured by the personal responsibility of one of the directors of the coal company. In Manufacturing Co. v. Hutchinson it was ruled that it was incompetent for the directors, the corporation being insolvent, to secure or to give preference to such a debt with a view to absolve one of its directors. Certainly the president of an insolvent corporation, without authority of the board of directors, cannot exercise any such function. I am therefore clear in opinion that the demurrer must be overruled.

It does not follow, however, that because the bank, complainant, could not thus obtain a preference over other creditors, the intervening petitioner is entitled to the benefit of a priority which its petition condemns in the bank, complainant. There is no real attack upon the bona fides of the actual indebtedness to the bank, complainant, although it is asserted—but merely upon belief—that the note given by the president on the 17th of April was in excess of the actual indebtedness. The complainant bank, irrespective of the attempted preference, was entitled to share ratably with all other creditors of the coal company in the distribution of its assets. There was no actual fraud or moral turpitude in the transaction. It amounted merely to a constructive fraud, because the law condemns such transactions. This does not debar the complainant of its right to share with other creditors in the distribution of the estate, nor does it prevent the court from imposing upon the fund in the interest of the bank, complainant, the expense incident to the accumulation of the fund. The order will therefore be that the amendments proposed to the intervening petition will be allowed, the demurrer to the original petition to stand as a demurrer to the petition as amended. The demurrer will be overruled, with leave to the complainant bank, if it shall be so advised, to answer thereto to the merits within 20 days; otherwise a decree will be passed that the fund be charged with the expense of this bill, including a reasonable counsel fee to the solicitors for the complainant, and for distribution of the fund according to law.