STATE OF IOWA ex rel. H. M. HAVNER, Attorney-general, Plaintiff, v. ASSOCIATED PACKING COMPANY et al., Defendants.

T. J. HYNES, Receiver, Appellee, v. BERT R. ARBOGAST et al., Appellants.

No. 39639.

NOVEMBER 21, 1929.

REHEARING DENIED JUNE 23, 1930.

*M. A. Roberts, S. G. Van Auken, O. M. Brockett,* and *S. W. Livingston,* for appellants.

*Parrish, Cohen, Guthrie, Watters & Halloran, Bradshaw, Schenk & Fowler, Charles Hutchinson,* and *Stuart S. Ball,* for appellee.

GRIMM, J.—The Associated Packing Company, on October 10, 1918, filed articles of incorporation with the secretary of state. The articles were duly approved by the secretary of state, and a certificate authorizing the corporation to engage in business was duly issued. It had an authorized capital stock of $2,000,000. On March 29, 1919, the authorized capital stock was increased to $5,000,000. Afterwards, through agents and representatives, this corporation entered into contractual relationships with a multitude of Iowa citizens and others, who agreed to purchase its stock, and it assembled resources of considerable value.

In February, 1920, the attorney-general of Iowa instituted an action in equity in the district court of Polk County, Iowa, praying for the dissolution of the corporation and the appointment of a receiver to wind up its business. On February 27, 1920, a temporary receiver was appointed, and the receivership was made permanent on March 16, 1920. On April 17, 1920, an auditor appointed by the receiver filed a report in the receivership, showing an excess of liabilities over assets of said Associated Packing Company in the sum of $1,096,141.62. Among the claims filed and allowed was the claim of the Linden Bank against the corporation, amounting to $216,751.10, which was allowed by the court, June 2, 1922. On February 8, 1925, the district court of Polk County entered an order directing the receiver to bring suit against the various parties who had contracted to purchase stock, in order to accumulate a fund with which to pay the Linden Bank claims and other claims against the corporation. On April 23, 1925, in compliance with the said order of court, the receiver brought this suit now pending on appeal. On July 6, 1928, the district court of Polk County, Iowa, entered an order and decree of assessment against the said defendants of 50 per cent upon the principal sums upon all unpaid subscriptions to stock of the Associated Packing Company, and the defendants appeal.

I. Statute of Limitations. The defendants in this case filed a resistance to the receiver's said application for an order for

assessment, containing many grounds, one of which is that the cause of action, if any, against the defendants was barred by the statute of limitations. This resistance alleged that the report of the auditor employed by the receiver, filed April 17, 1920, showed an excess of liabilities over assets of the corporation, whereby the receiver and the creditors, it is claimed, were fully advised that the assets were insufficient to pay the alleged liabilities, and that the cause of action then accrued against these defendants, and the statute of limitations then began to run in their favor. It appears that the receiver's application for assessment was not filed until the 23d day of April, 1925, and that no notice thereof was served upon the defendants until more than five years after the 17th of April, 1920, when said auditor's report was filed.

There is also contained in said resistance the claim that, even though the action is not yet barred, it will be barred before notices can be served in actions at law against the various defendants, to recover the amounts due under said assessments, and that the levy of an assessment under such circumstances would be an abuse of discretion on the part of the court.

In an amendment to the resistance, it is alleged that, in the original petition filed by the attorney-general, it was charged that the Associated Packing Company was insolvent; that all of the claims which had been filed had accrued prior to February 7, 1920; and that, by reason thereof, the cause of action is barred. It will be noted that the order of the court to bring the suit was made February 28, 1925, or five years and one day after the receiver was appointed.

Each of the appellants in this case signed a written instrument, loosely denominated, in this case, "subscriptions," in one of four different forms, and substantially as follows:

"No. 1291

"Agreement of Purchase of Stock of
"ASSOCIATED PACKING COMPANY
"(An Iowa Corporation)
"DES MOINES, IOWA
"312-313-314
"Citizens Nat'l Bank Bldg.,

"Des Moines, Iowa.

"Capital $2,000,000.  Par Value—$100 a Share
Fully Paid and Non-
assessable.

"I................................................of................................................State of
................................................do hereby purchase from you................shares
of ASSOCIATED PACKING COMPANY STOCK, and agree to pay you
therefor One Hundred Dollars per share, total................................
payable as follows: Not less than one fourth cash accompanying
this purchase, and the balance thereof as evidenced by my prom-
issory note of even date and number herewith.

"As soon as the total purchase price has been paid in cash
a certificate for the stock hereby purchased is to be delivered to
me. Should I fail to complete the payments herein provided for
when due, I agree to forfeit the initial payment made hereon to
you as liquidated damages.

"No conditions or representations other than those printed
in this agreement are relied upon by me in the purchase of this
stock.

"Dated and signed this................day of................19........."

Each of the appellants also signed one or more promissory
notes, evidencing the unpaid portion of the purchase price, as
specified in the written agreement.

We are called upon to determine whether, at the time the
assessment in question on this appeal was made, the power to
make it had been barred by the statute of limitations.

Courts of last resort are not at all in harmony upon the
general question as to when, in cases of this kind, the right of
action to the receiver against the stockholder accrues. In the in-
stant case, the liability of the appellants, if any, arises out of the
written agreement of purchase of stock, and the power of the
court to make an assessment is not barred. An examination of
our own cases, some of which have been cited by the appellants
as contrary to this holding, shows that they are not, in fact, in
conflict with it.

*First Nat. Bank of Garretsville v. Greene,* 64 Iowa 445, is
strenuously urged by the appellants. An examination of this
case discloses that the liability of the stockholder, Greene, arose
out of his ownership of stock which had been delivered to him,

but for which he had paid only a portion of the par value. Greene's obligation in that case arose solely out of his relation to the corporation by virtue of his ownership of stock, not by reason of any written agreement to buy stock.

In *Great Western Tel. Co. v. Purdy*, 83 Iowa 430, there was before the court a written subscription; but it provided for the payment in cash, on the date of the subscription, of a certain amount, "and the balance as the directors from time to time may order." The directors made no such call. It appears that no demand or order for payment was made for over 14 years thereafter. This court held the claim barred.

In *Prescott v. Gonser*, 34 Iowa 175, the plaintiff held warrants against Clay County, properly signed, but the seal of the county had not been affixed. The officials of the county, upon demand subsequently made, refused to affix the seal, and an action in mandamus was brought. The warrants were issued on the 31st day of December, 1864. The statute of limitations at that time was three years. The demand upon the county officers to affix the seal was made on the 25th day of October, 1870, and the suit was brought promptly thereafter. The claim was made that the statute did not begin to run until the county officials refused to affix the seal. The court said:

"To allow him [the plaintiff] to suspend the operation of the statute of limitations by his own neglect to make demand, would be to permit him to take advantage of his own wrong."

*Baker v. Johnson County*, 33 Iowa 151, was an action to recover compensation for services rendered to the county by the plaintiff. There was no written agreement of any kind involved.

Appellants have cited no case, and we have found none, where the statute of limitations was held a bar to the right to order an assessment, under circumstances such as those found in this case.

II. Preliminary to a further discussion of this case, it may be observed that some confusion has crept into the decisions in the use of the terms "The English Doctrine" and "The

Trust Fund Doctrine,'' some writers apparently using the terms to mean different rules. The so-called ''Trust Fund Doctrine'' is the general term. Broadly speaking, it is a rule of equity by which all of the assets of an insolvent corporation pass to the receiver, to be equitably distributed to innocent creditors of the corporation. Various qualifications of this rule are recognized, but no attempt will be made here to discuss them. The so-called ''English doctrine'' is also a ''trust fund doctrine,'' the principal distinction being that, under the English rule, a subscriber to stock cannot rescind, either by notice to the corporation or by action, after the corporation has become insolvent and winding-up proceedings have been commenced, even though he has not been guilty of laches either in discovering the fraud or in rescission after its discovery, the rights of innocent creditors being regarded as superior to the right of stockholders, even though his subscription has been procured by fraud, and he has not been guilty of laches. This court is committed to at least one modification of the English rule, and it is stated as follows:

''* * * the right of the receiver to recover of the defrauded party on his subscription is recognized when 'there are claims in the hands of the receiver to be satisfied out of the corporate assets that accrued after the subscriber had obligated himself.' '' *Lex v. Selway Steel Corp.*, 203 Iowa 792, 813.

In *State ex rel. Hawner v. Associated Packing Co.*, 206 Iowa 405, this court said:

''We are of the opinion that the court properly, upon the record presented, held the receiver entitled to recover the unpaid portions of their subscriptions from subscribers who had not rescinded at the time application was made for the appointment of a receiver.''

This statement is based upon the rule announced in *Lex v. Selway Steel Corp.*, 203 Iowa 792, and must be read in light of the definite holding stated in the *Lex* case, hereinbefore quoted.

III. The appellants claim that, inasmuch as the original proceedings in this case were not based upon insolvency, the ''Trust Fund Doctrine'' does not apply. It appears that the

real moving cause for the filing of the petition for the dissolution of the corporation was alleged fraud practiced by the promoters upon the state in the application for a charter, violations of statutes, conspiracy between the officers of the Associated Packing Company and those of the Associated Finance Company, an incorporated fiscal agent of the Packing Company, and other irregularities; and that insolvency, in the first instance, was not involved. While it is true that the trust fund doctrine had its origin largely in situations arising out of the insolvency of corporations, yet it has been found advisable to extend the doctrine so as to apply in cases such as the one at bar. The real purpose of the doctrine is to protect the rights of innocent persons who have dealt with the corporation to their loss, upon the belief, on their part, that the stock has been paid for in full at par, by applying to the credit of such innocent persons, equitably, the unpaid portions of the purchase price of shares of stock in the corporation. There appears to be no sound reason why the doctrine should not be applied in cases such as the one at bar, in the same manner and to the same extent as if a receiver had been appointed for the corporation by reason of the insolvency of the corporation. This position finds some support in our own cases. See *State Trust Co. v. Turner*, 111 Iowa 664. While the exact question was not before the court, yet the court quotes with approval from *Hollins v. Brierfield Coal & Iron Co.*, 150 U. S. 371 (37 L. Ed. 1113):

"Yet all that is meant by such expressions [trust fund] is the existence of an equitable right which will be enforced whenever a court of equity, at the instance of a proper party, * * * has taken possession of the assets."

See, also, *Swartley v. Oak Leaf Creamery Co.*, 135 Iowa 573. See, also, *Sutton Mfg. Co. v. Hutchinson*, 11 C. C. A. 320 (63 Fed. 496). In that case, in a suit to set aside a mortgage in order to apply the property covered thereby to the interest of general creditors, the court, after reviewing a number of the Federal cases, says:

"It is, we think, the result of the cases that, when a private corporation is *dissolved,* or becomes insolvent, and determines

to discontinue the prosecution of business, its property is thereafter affected by an equitable lien or trust for the benefit of creditors." (Writer's italics.)

See, also, *Fear v. Bartlett,* 81 Md. 435 (33 L. R. A. 721, 32 Atl. 322). In that case, a suit was brought by a trustee, to enforce the payment of the defendant's subscription to the capital stock of the company. The court said:

"But whatever may have been the origin of the doctrine, it means, and can only mean, that, when a corporation has been lawfully dissolved, or has become insolvent, its entire property, including unpaid subscriptions to its capital stock, becomes a trust fund for the payment of its debts, and that creditors are entitled in equity to have their debts paid out of the assets of the company before there can be any distribution among the stockholders. *Fogg v. Blair,* 133 U. S. 534; *Railroad Co. v. Ham,* 114 U. S. 587; *Brant v. Ehlen,* 59 Md. 1. And no one can question the justice and sound sense of the doctrine as thus understood. But it is only when the company has been dissolved or has become insolvent that this equitable doctrine arises."

In the light of the holdings of the foregoing cases, and upon reason and equity, we hold that the trust fund doctrine applies to cases in which a receiver is appointed in connection with the dissolution of a corporation under the procedure provided under Section 8402 of the Code of 1927.

The language in *Independent V. & S. Co. v. Iowa Merc. Co.,* 184 Iowa 154, when carefully analyzed, is not out of harmony with the foregoing holding. Neither is there anything contrary in *State Tr. Co. v. Turner,* 111 Iowa 664; *Luedecke v. Des Moines Cab. Co.,* 140 Iowa 223; nor *Lex v. Selway Steel Corp.,* 203 Iowa 792, 812.

IV. It is next claimed by the appellants that the court, for numerous reasons, erred in including within the liabilities of the Associated Packing Company, for the purpose of making an assessment, the claim of the Linden Bank.

It appears that this claim was contested by the receiver, and a number of the appellants intervened. The resistance filed

is not before us. Subsequently, the trial court entered an order establishing the claim, and from this order there was no appeal. At least for the preliminary purpose of ascertaining the probable extent of the indebtedness of the corporation the order of the court on the Linden Bank claim is an adjudication against the receiver, as a claim against assets in his hands. Further we do not here decide.

V. Though the receiver has not appealed, he strenuously contends, and argues at great length, that:

"The decree rescinding the Linden Bank's contract restored the *status quo ante* and the trial court's decree finding that the bank relied upon appellants' subscriptions, and allowed the bank's claim, is *res adjudicata.*"

This is an appeal from an order of assessment on stockholders. Both sides have shown remarkable versatility in presenting questions for determination. Manifestly, many of them are not for solution upon this appeal. This is one of them.

In support of the receiver's proposition above quoted, many cases from this and other jurisdictions are cited. We have examined each of them carefully. No one of them is in support

of the proposition that the said decree and finding of the court is *res adjudicata* against the right of each defendant, in an action at law, to interpose all defenses to the assessment personal to him. What these defenses, if any, may be, will depend upon the facts in each particular case. If the receiver's contention were correct, there would be no need for a suit at law against defendants to enforce the payment of assessment. See *Kosman v. Thompson,* 204 Iowa 1254.

VI. It is next claimed that one or more creditors are not entitled to an assessment and recovery against the defendants and other so-called subscribers, and that by reason of said fact

 the receiver cannot act in this proceeding, for the reason that it is no part of his duty or power to adjust conflicting rights and equities between creditors, or between creditors and stockholders: that is, he cannot act for the benefit of a part of the creditors only; he must act for all, or none.

In the proceedings so far taken in this case, the receiver has, generally speaking, in effect, taken only the following steps: (1) Ascertained the nature and probable extent of the indebtedness of the corporation, (2) the probable expense of the receivership, (3) the probable amount of available assets, (4) the probable amount or value of the unpaid portion of stock held by parties who are claimed to be stockholders, which must be added to available assets to pay off the debts and cost of administration. In so doing, the receiver has acted *for all* the creditors, and against all parties interested adversely to the receiver, acting in his capacity for and on behalf of all of the creditors; and while, at some further stage in the proceedings, it may be necessary or proper to adjust conflicting rights and equities between creditors, or between creditors and stockholders, that fact does not preclude this procedure now on appeal.

VII. It is next claimed by the appellants that the Associated Packing Company never held title to any contracts, notes, subscriptions, or obligations against these defendants or any other so-called subscribers, upon which it could  make an assessment, for the reason (as it is claimed) that fraud and absolute failure of consideration in their inception have been established as to all the world by the decree of Judge McCall in dissolving the corporation. The portion of the findings in said decree referred to is as follows:

"That there was intentional fraud in failing, on the part of said corporation and its incorporators, to comply substantially with the articles of incorporation, through having no good-faith intention to engage in the packing business, and in deceiving the public in relation to the means and liabilities of the Associated Packing Company, by the officers and promoters of said Company; and that the said corporation, the Associated Packing Company, was organized for the purpose of making promotion

profits, and without the good-faith intention of entering into the business of operating a packing plant; and that there was fraud practiced upon the state of Iowa in the application made for a charter by the persons applying for the same in behalf of the defendant corporation, the Associated Packing Company; and that there was a conspiracy between the officers of said corporation, the Associated Packing Company, and those interested in the Associated Packing Company; and that the court further finds that the said corporation, the Associated Packing Company, should be dissolved, its charter revoked, and a liquidation had of its affairs.''

The incorporators of the Associated Packing Company performed all the usual and ordinary steps as by law provided in the formation of a corporation, such as preparing, acknowledging, and filing articles of incorporation, and securing from the secretary of state a certificate, in the form and under the circumstances provided by the law of this state, and thereafter proceeded to function as a corporation until the bringing of the original action in equity in this case, brought by the attorney-general, to dissolve the corporation. It was in this action to dissolve that the trial court found as above quoted. Notwithstanding the finding of the trial court, we think that, in a preliminary proceeding such as this, the receiver has such prima-facie title to all of the property which passed into his hands under the orders of the court, including written agreements for the purchase of stock, and notes in connection therewith, as is necessary in this preliminary proceeding. If, in any suit at law, the question arises as to whether the defendant became a stockholder of said company, it must be determined on the record made in said suit, and independently of what is herein said. See *Kosman v. Thompson,* 204 Iowa 1254, 1261.

VIII. It is claimed by the appellants that the contracts signed by the defendants and others were not subscription contracts of the nature contemplated by the so-called trust fund doctrine, ''but were merely executory contracts of purchase, and if enforcible at all, created the relationship of creditor and debtor only,—did not in any manner make the defendants or others stockholders or subscribers for stock, nor render them liable to assessment as such.''

This court has held, in *Lex v. Selway Steel Corp.*, 203 Iowa 792, 806:

"But the point here is that neither his liability nor his right to rescind depends *alone* upon the fact that stock was or was not issued to him. *Independent V. & S. Co. v. Iowa Merc. Co.*, 184 Iowa 154; *Lamb v. Bonesteel*, 186 Iowa 971. If he has not rescinded, and cannot rescind,—that is to say, if the fraud in the inception of his contract is not available to him as a defense,— he is liable for the unpaid portion of his subscription, whether stock has been issued to him or not. In this view of the matter, any distinction between one who has subscribed for stock under a contract by which the stock was to be issued to him on payment therefor in full, and one to whom stock has been issued without payment in full, is in itself, we think, quite immaterial to the present inquiry."

In reaching the foregoing conclusion in the *Lex* case, much reliance is placed upon the opinion in *Waukon & M. R. Co. v. Dwyer*, 49 Iowa 121. In that case it is apparent that the defendant was one of the originating or promoting stockholders, who joined with others in the creation of the corporation. Payments on his stock subscription became due and enforcible only when and after and if a certain number of shares were subscribed.

When these cases are all carefully scrutinized, and considered with other adjudicated cases on the subject, there is found to be a distinction between the liability to creditors, in receivership, of an originating or promoting subscriber and a subscriber in good faith who innocently subscribes to the stock of a then organized corporation in the ordinary course of business. In the case of the promoter, he brings into being a state of affairs well calculated to induce the extension of credit out of which the promoter expects to profit. In the latter case, ofttimes at the behest of the promoter or his direct representatives, the subscriber, after the organization of the corporation, merely enters into an executory contract to take and pay for shares of stock in the corporation. He agrees to buy the shares of stock in the corporation in the same manner as he would agree to buy any other commodity on the market. 14 Corpus Juris 508, and cases cited.

768

It is claimed that the holding in the case of *Kosman v. Thompson,* supra, is a final determination that all of the defendants in this case were stockholders, as distinguished from mere subscribers. A careful examination of the case discloses otherwise. It simply holds that, for the purposes of the making of an assessment, the defendants must be considered stockholders. There is in neither the *Lex* case nor the *Kosman* case a determination that a mere subscriber to shares of stock in a corporation already organized, to whom certificates of stock have not been issued (independent of all other considerations), is a stockholder, in contemplation of the so-called trust fund doctrine. Neither do we here determine that question. It can only be properly determined upon the facts and circumstances as proven in each particular case, when an alleged stockholder is sued at law, to enforce an assessment against him.

IX. It is next claimed by the appellants that, inasmuch as the charter of the Associated Packing Company was annulled on August 23, 1920, thereafter all corporate relationship ceased,

 and the receiver appointed became merely a trustee for the liquidation of the assets in his hands, and that the said receiver has no power to make or levy an assessment against so-called stockholders, for the reason that he is not the representative of said corporation or its creditors.

After the state of Iowa had issued a certificate to the Associated Packing Company as a corporation organized under the laws of said state, the corporation continued to transact business with various parties who now claim to have become innocent creditors of said corporation. While it is true that the corporation was annulled, nevertheless, for the purpose of liquidating it and winding up its affairs, the receiver still represents the corporation, much in the sense that the directors and officers of a corporation whose corporate period has expired still continue to act for the corporation in winding up the corporation's affairs; and further, because of the fact that the receiver has been appointed by a court having jurisdiction of the subject-matter, to take over the assets of the corporation and act in the winding up of its affairs.

X. It is next claimed by the appellants that, because of the decree of dissolution by Judge McCall hereinbefore referred to,

and the holding of this court in *Udell Sav. Bank v. Hollings-worth,* 194 Iowa 440, "the Associated Packing Company never was a legal corporation *de jure* nor *de facto,* and it never did have stockholders, and never had the right or power to sell or issue stock, and by reason of said facts, these defendants and other purchasers of stock could not have been assessed by the so-called corporation, nor can they be by this receiver."

In *Kosman v. Thompson,* 204 Iowa 1254, the appellants raised the point that the Associated Packing Company was not such a corporation as that Section 8402 of the Code of 1927 could apply,—the theory of that attack being that Section 8402 applied only to corporations, and that the McCall decree of dissolution, in substance, held that the Associated Packing Company never had been a corporation. After a full discussion of that question, this court said:

"But whether this be so or not, it is enough for us to hold that the action on the part of the organizers of the Associated Packing Company preliminary to and including the filing of the articles of incorporation, together with the subsequent action of the secretary of state in issuing and delivering the certificate of incorporation, created such 'legal status' as to amount to a 'corporation,' within the contemplation of said Section 8402; and this is so regardless of the secret intentions of the incorporators. There was such 'corporation' so far as anyone was concerned except the state. It alone could say otherwise. And had the sovereign so elected, said institution could have continued to exist and operate under its charter. Wherefore, we are constrained to hold that the district court in equity had jurisdiction under said section to, and did, totally dissolve said Associated Packing Company, cancel its charter, forfeit its franchise, and appoint a receiver to wind up its business."

At least so far as this preliminary proceeding now on appeal is concerned, there was created a corporation, in the sense that, and to the extent that, the assessment in controversy before us here cannot, upon that question, be set aside.

XI. Certain of the appellants in this case filed claims with the receiver, on the ground that their subscriptions were obtained

by fraud, and asked that they be established as claimants for the amounts actually paid by them on their subscriptions. These claims were all disallowed by the lower court, in a decree filed on the 12th day of September, 1924, on the ground that the claimants had not rescinded their subscriptions before the appointment of the receiver. Thereafter, the said claimants appealed to this court, and this court, in *State ex rel. Havner v. Associated Packing Co.*, 206 Iowa 405, quoted from *Lex v. Selway Steel Corp.*, 203 Iowa 792, as follows:

"We are of the opinion that the court properly, upon the record presented, held the receiver entitled to recover the unpaid portions of their subscriptions from subscribers who had not rescinded at the time application was made for the appointment of a receiver."

We then said:

"The rule announced in the *Lex* case is conclusive against the contention of the appellants of their right to rescind their stock subscription contracts by filing claims with the receiver after the decree of dissolution of the corporation."

It will be noted that the parties sought to have allowed as claims against the receiver the amounts they had each advanced in part payment on stock purchases. The decision referred to is conclusive on that subject. The question of recovering on assessments was not, directly at least, involved. In so far as the case at bar is concerned, that is all that was determined in those cases. This holding does not, under the varying circumstances which may be shown in evidence, preclude certain personal defenses hereinbefore referred to, when properly interposed by defendants against whom suits are being pressed for collection of assessments.

The above quotation from the *Havner* case is substantially what is known as the English Rule, which, as has been seen, has been modified by this court. *Lex v. Selway Steel Corp.*, 203 Iowa 792.

XII. While the receiver has not appealed, he strenuously urges that many, if not all, of the appellants are bound by the decree of the 2d day of June, 1922, in which the claim of the

Linden Bank was approved. Said decree held the Linden Bank entitled to a rescission of its contract made with the Associated Packing Company, and to a claim against the receiver in the sum of $216,751.10. On this question, so far as this appeal is concerned, we hold only that, for the preliminary purpose of ascertaining the probable extent of the indebtedness of the corporation, the decree referred to is binding as against the assets of the corporation in the hands of the receiver; but nothing herein contained is to be construed as determining the rights or defenses of any defendant which are personal to him, in an action at law brought by the receiver against any alleged stockholder to recover on the so-called Trust Fund Doctrine.

XIII. One of the errors relied upon for reversal is the claim that there is no showing that there is a single actual stockholder of the Associated Packing Company who has not paid for his stock in full. Manifestly, this is both a question of law and fact, to be determined upon the trial of each particular case at law. There is, on that question, sufficient showing to warrant, in this preliminary proceeding, the assessment in controversy.

XIV. The decree from which the appeal is had in this case contains the following language:

"That, as heretofore found by this court, all of said creditors of said corporation whose claims were allowed, as above stated, extended credit to said Associated Packing Company in  reliance upon the subscriptions for capital stock made by the stock subscribers who are parties to this suit and others who are not now within the reach of the processes of this court, and said subscriptions constitute a trust fund for the benefit of said creditors."

Only in so far as, if at all, alleged stockholders were made parties defendant in a contested hearing on the allowance of a claim, or intervened therein, and the question was directly in issue, is the foregoing from the decree binding. It follows, therefore, that the decree must be modified to that extent.

In the very able and exhaustive arguments of counsel filed herein, other questions have been presented, all of which have

been carefully considered. We find no ground for reversal, and the cause is—*Modified and affirmed.*

MORLING, J., not participating.

STEVENS, J., dissents.

All the other justices concur.

STEVENS, J. (dissenting).—As to the propositions passed upon by the majority in this case, except as herein indicated, I desire to be understood as expressing no opinion. I adhere to all I said in the dissent to the opinion in *Kosman v. Thompson,* 204 Iowa 1254. In my opinion, the court in this case should have refused to permit the receiver to proceed against alleged stockholders of the Associated Packing Company. As I view it, they ceased to be such after the State, in an action in equity, obtained decree rescinding and canceling the charter issued to it, upon the ground of fraud in its procurement. By this decree, subscriptions for stock became waste paper,—not because the corporation was insolvent, but because, by act of the sovereign, its right to do business as such was taken away. The alleged corporation could not thereafter issue or deliver certificates of stock to anyone. The consideration for the contract was totally wiped out. The trust fund doctrine is strictly of judicial origin, and is strictly of equitable cognizance. There is no equitable basis upon which to support the decree in this case. Subscribers for stock obtained nothing, for the reason, as stated, that, by the act of the sovereign, which granted the company the right to do business as a corporation, the right to issue certificates of stock was taken away. The subscribers were as innocent of the fraud practiced upon the state as were the creditors of the corporation. Nothing could be more inequitable than for the court to permit the receiver to proceed against subscribers for stock and compel them to pay an assessment for the benefit of creditors. There is no equity in the proposition that subscriptions for stock, under such circumstances, constitute assets of the corporation, to be administered as a trust fund for the benefit of creditors. The application of the trust fund doctrine to the facts of this case is, in my opinion, grossly inequitable and wholly unjust. The situation is different from what it would be if the corporation had ever had a *de jure* or a *de facto* existence, and had become in-

solvent, and in this way its stock was rendered worthless. The subscriptions for stock were rendered worthless in this case because of the cancellation and rescission in equity by the state of its contract with the original promoters of the fraudulent scheme. As bearing upon these propositions, see 8 Fletcher's Cyclopedia Corporations, Section 5027 *et seq.*; *Luedecke v. Des Moines Cabinet Co.*, 140 Iowa 223; *Hollins v. Brierfield Coal & Iron Co.*, 150 U. S. 371 (37 L. Ed. 1113); *Wood v. Dummer*, 3 Mason's Rep. (U. S.) 308 (opinion by Judge Story).

I would reverse.