STOUT and others *v.* YAEGER MILLING Co. and others.*

*(Circuit Court, E. D. Missouri. October 30, 1882.)*

1. CORPORATIONS—WHEN DIRECTORS MAY TAKE SECURITY FROM.

The directors of a solvent corporation may lawfully pledge its securities to secure individual demands of directors and others, due and to accrue, for money, loaned to it.

2. SAME—PLEDGE—DELIVERY.

Where the directors of a corporation placed the company's policies of insurance in the hands of two of its directors without any formal assignment, to secure loans made and to be made by such directors and others to the corporation, *held*, that there was a sufficient delivery to sustain the pledge.

3. SAME—FRAUDULENT PREFERENCE.

Where A., a bank which held stock in B., an insolvent corporation, and and which was a representative in B.'s board of directors, took security from B. for money due it from B., and for advances to be made by it on B.'s account, and thereafter made large advances on the faith of the security received, *held*, that A. was bound to account to unsecured creditors for their *pro rata* of the proceeds of such securities.

In Equity. Creditors' bill.

The Yaeger Milling Company, of St. Louis, was on the seventeenth day of August, 1880, and for several years prior to that date had been, a corporation engaged in the manufacture of flour, and owned a large mill and wheat warehouse, with elevator machinery, for the prosecution of its business. Both building and the machinery therein were unincumbered. On August 17, 1880, the company's mill and warehouse were both destroyed by fire. Several years prior to the fire, and while the company was solvent, it had placed a number of policies of insurance upon its mill, warehouse, etc., in the hands of two of its directors, which, together with their renewals, it agreed to allow to remain in said directors' hands as pledges to secure loans which had been, and which might thereafter be, made to it by defendants and others to enable it to carry on its business. There was no formal assignment of the policies—they were simply placed in the directors' hands. At the time the fire occurred John Crangle, Henry C. Yaeger, George D. Capen, Arnold Hussmann, H. D. McLean, and G. L. Joy were directors of the milling company. They represented stock owned by the Citizens' Insurance Company, the Second National Bank, and the Fourth National Bank, all of which were creditors of the milling company, having loaned it money and accepted as security the above-mentioned pledge of the company's policies of insurance.

*Reported by B. F. Rex, Esq., of the St. Louis bar.

H. D. McLean was also an individual creditor of the company, and was secured in the same manner as the corporations named. After the milling company's buildings were destroyed by fire the insurance was collected and distributed among the creditors who had loaned the company money and been secured by the policies. At the time the fire occurred the milling company was doing its banking business through the Fourth National Bank, and as the fire had left the company insolvent the Fourth National refused to pay a number of drafts outstanding against the company, or to pay any checks drawn by it, unless it received security, not only for future advances, but also for overdrafts which the company then owed it. The milling company then gave it, as security for said overdrafts and future advances, a bill of sale of all its personal property and a mortgage upon its real estate, and the bank thereafter advanced the milling company large sums of money upon the faith of the security received. The plaintiffs in this action are partners. The Yaeger Milling Company having failed to pay for machinery they had sold it, they recovered judgment therefor, but failed to collect it upon execution. They now bring their bill against said company, and its above-named creditors and directors, charging that the directors of the Yaeger Milling Company acted unlawfully in distributing the proceeds of said policies among themselves, and in giving the Fourth National Bank said bill of sale and mortgage.

*Overall & Judson*, for complainants.

*Noble & Orrick*, for the Yaeger Milling Company and the Second National Bank.

*G. U. Stewart* and *Paul Bakewell*, for H. D. McLean.

*Paul Bakewell*, for Henry C. Yaeger.

*Lee & Chandler*, for Fourth National Bank and Arnold Hussmann.

TREAT, D. J. The theory of the bill, as stated by plaintiffs' solicitors, is correct, viz.: That the assets of an insolvent corporation are a trust fund for the benefit of all the creditors, to the extent, at least, that the directors, while it is under their management, cannot appropriate the assets thereof to the payment of demands due to themselves individually, to the exclusion of other creditors and by way of preference to themselves. Starting with that proposition, the next inquiry is concerning securities pledged prior to insolvency to secure the individual demands of directors and others—demands existing and to accrue for money loaned. The facts as shown by the evidence are not so clear as they ought to be; for it is evident that the enterprise was carried forward upon an understanding that the principal

creditors of the former establishment should furnish funds for the new, resting for their security upon the solvency and property of the company in common with all other creditors, and also upon the insurance fund, especially pledged for their advances and money loaned. The principal defendants in this case being creditors when the prior milling establishment was destroyed by fire, chose to embark in the new enterprise, instead of receiving that insurance fund. It is not necessary to comment upon the violation of the national bank law committed by some of the defendants in investing the funds of their banks and engaging in operations not authorized by their charters. This case, however, shows the wisdom of the United States laws on that subject; but it cannot depend upon or be controlled by any such considerations.

Was the pledge of the insurance policies, under the facts and circumstances, a valid and subsisting pledge in favor of the parties in interest, entitling them to appropriate the proceeds thereof, as was done? The cases cited, notably *Casey* v. *Cavaroc*, 96 U. S. 467, turn upon the actual delivery of the pledge for the benefit of the pledgee, so as to avoid secret preferences and pledges to the detriment of other creditors. Where bills of exchange, promissory notes, etc., as in that case, are alleged to have been pledged, there should be some evidence thereof by way of indorsement or assignment, without which the pledgee could not recover thereon. Such bills, notes, etc., are a part of the assets of the pledgeor, and subject to the payment of his debts, unless validly transferred. How is it with policies of insurance? They are no part of the security for general creditors, except so far as assets therefrom may become assets of the company or pledgeor after the contingency happens, viz., loss by fire. If policies are taken out by creditors for their own benefit, or if, to secure present and prospective creditors, the debtor agrees to take out such policies and does so for the benefit of prescribed creditors, no fraud is practiced on other creditors. It is a matter of daily occurrence that creditors require their debtors to insure their property and assign or pledge the same as security. They are not willing to trust the event of the debtor's solvency if his property is destroyed by fire, and hence exact such security in addition to his personal liability. In the absence of such an arrangement the creditor may well be supposed to rely upon his debtor's ability to meet his liabilities, irrespective of the contingency by fire. The debtor was not bound to insure, and if he did not, the creditor had no recourse except upon his remaining assets. If he did insure, and the proceeds thereof became a

part of his general estate, they became subject to the demands of his creditors, equally with other assets. But if the insurance was made, not for the general benefit, but solely or primarily for the security, of a specified class of creditors, by agreement with them, why should not the transaction be upheld; and by what legal or equitable right could the unsecured creditors claim that they should share in such securities?

The question, however, in this case is as to the pledge of the policies and their renewals for the purposes alleged. There was no formal assignment, and no consent of the insurance companies to such assignments. The original policies were placed in the hands of Nulsen for the benefit of specified creditors, and as changes occurred the renewals were placed in the hands of Capen and McLean, that they might cause those securities to be kept alive for the purpose of the original pledge. When the fire occurred and the amount of losses was collected, the sums so collected would necessarily have to be paid over to the pledgeors, to the amount of their demands secured. The fact that the creditors were directors, and the company, pledgeor, and directors were the trustees for the benefit of said creditors, cannot affect the good faith of the transaction, if the agreement to pledge existed at the time of the advances, and the creditors were within the terms of the pledge. Other or general creditors who had not taken such securities have no ground of complaint. There was no preference, within the admitted rule, but merely an enforcement of securities. Hence the allotment of the policies of insurance as pledged, does not fall within the inhibited act. There is a difficulty as to the bill of sale and mortgage made after the fire to the Fourth National Bank. If its prior advances fell within the terms of the pledge, it had a right to its *pro rata* compensation from the proceeds of the insurance; but it seems that it did not rely upon that fund. It took for overdrafts and new advances, after the fire, a bill of sale and mortgage for these demands, which, as the company was insolvent, the directors had no legal authority to grant, that bank being a stockholder and representative in the directory. Hence the bank must account to the plaintiffs for their *pro rata* of the proceeds of such bill of sale, and of the mortgage which it received.

The decree will be that said Fourth National Bank be held to account for and pay over to the plaintiffs their *pro rata* of the securities acquired by said bank after the fire occurred,—the bill being

retained as to other parties to abide the result of said preference to said bank. The amount for which said Fourth National Bank is liable under this ruling being undetermined, an order will be entered, unless the parties agree to said amount within 10 days herefrom, to refer the same to Thomas G. C. Davis as special master, to hear testimony and report to the court said amount.