W. P. NOBLE MERCANTILE COMPANY, A CORPORATION, AND ARTHUR PARSONS, INTERVENER, APPELLANTS, *v.* MOUNT PLEASANT EQUITABLE CO-OPERATIVE INSTITUTION, PETER MATSON, ASSIGNEE, MOUNT PLEASANT COMMERCIAL & SAVINGS BANK AND GEORGE CHRISTENSEN, RESPONDENTS.[1]

1. ASSIGNMENT FOR THE BENEFIT OF CREDITORS.—VOID DEED OF ASSIGNMENT.—INSOLVENT CORPORATION.—FRAUDULENT PREFERENCES.—The defendant, a mercantile corporation being in-

---

[1] Rehearing denied Jan. 27, 1896.

solvent, and having abandoned the objects of its creation,. made a voluntary deed of assignment for the benefit of its. creditors, in which it preferred one S. a director and general creditor and one R., to whom the corporation was not indebted, but who had loaned money to one of the directors for the benefit of the corporation, and also a certain bank, for money loaned the corporation on certain promissory notes secured by mortgage on certain real estate, on which notes the directors. were endorsers. *Held,* that the deed of assignment is fraudulent and void, in that the corporate assets, upon the corporation becoming insolvent and abandoning the objects for which it was created, constitute a trust fund in the hands of the directors to be administered for the benefit of its creditors; that the fiduciary relation existing between the directors and the creditors forbids that the directors, by reason of their superior knowledge concerning the affairs of the corporation, gain any special advantage by preferring themselves over other creditors equally meritorious.

2. INSOLVENT CORPORATION.—DISTRIBUTION OF CORPORATE ASSETS.— The corporate assets of an insolvent corporation constitute a. trust fund. *First,* for the payment of its creditors; *Second,* for distribution among its stockholders, equally and ratably.

3. DEED OF ASSIGNMENT. — FRAUDULENT PREFERENCES. — WHEN FRAUDULENT INTENT PRESUMED.—The fact that a deed of assignment contains fraudulent preferences, indicates fraudulent intent, and that intent is presumed from consequences, notwithstanding, the assignor asserts that he had no fraudulent intent and an assignment made with fraudulent intent. is void as against all creditors who are, because of it, hindered,. delayed or defrauded in the collection of their claims.

4. ID.—ID.—FRAUD IN FACT VOIDS THE ASSIGNMENT IN TOTO.—The preference in a deed of assignment of one who is not a creditor of a corporation assignor, but who had merely loaned money to a director who had loaned it to the corporation, is. fraudulent in fact and voids the assignment in toto.

(No. 558. Decided Dec. 9, 1895. 42 P. R. 869.)

APPEAL from the District Court of the First Judicial District. Hon. H. W. Smith, *Judge.*

Action by W. P. Noble Mercantile Company, a corpora-

tion, against Mount Pleasant Equitable Co-operative Institution, Peter Matson, Assignee, Mount Pleasant Commercial & Savings Bank and George Christensen, to set aside a deed of assignment. Arthur Parsons intervener. From the decree rendered, plaintiff and intervener appeal. *Reversed.*

Mr. *F. B. Stephens,* and Mr. *Benner X. Smith,* for appellants.

Messrs. *Bennett, Marshall & Bradley,* for respondents.

Appellants rest their appeal on five contentions, which will be considered in their order.

*First*—Can an insolvent corporation assign with preferences?

Appellant's contention that it cannot is based on the so-called "trust fund" view of the property and capital stock of a corporation. And to support that contention the trust must be considered a true trust as distinguished from a trust *sub modo.* When the American "trust fund" doctrine was originated by Judge Story in 1824 it was first adopted by federal courts, and it was many years before it found substantial lodgment in the state courts. When it did, however, some state courts, misled by the term trust, ignored the limitations placed on the doctrine by the federal courts, and assuming it a true trust held every creditor of an insolvent corporation an equitable owner in the assets of the debtor. In this way the debtor, being turned into a trustee, could not prefer one *cestui que trust* to another. This is a striking example of the danger of using a broad term to express an idea which is not commensurate with the term.

The Supreme Court of the United States, while adhering to the "trust fund" doctrine as it was originally declared,

has frequently taken pains to define its limits. In *Wabash & C. Ry. Co.* v. *Ham,* 114 U. S 594, the court, speaking by Mr. Justice Gray, say: "The property of a corporation is doubtless a trust fund for the payment of its debts, in the sense that when the corporation is lawfully dissolved and all its business wound up, or when it is insolvent, all its creditors are entitled in equity to have their debts paid out of the corporate property before any distribution thereof among the stockholders. It is also true in the case of a corporation, as in that of a natural person, that any conveyance of property of a debtor, without authority of law, and in fraud of existing creditors, is void as against them."

In *Peters* v. *Bain,* 133 U. S. 691, the court says: "Undoubtedly unpaid subscriptions to stock are assets and have frequently been treated by courts of equity as if impressed with a trust *sub modo,* in the sense that neither the stockholders nor the corporation can misappropriate such subscriptions so far as creditors are concerned."

But the question as to the nature of this trust, seems to have been directly raised in *Fogg* v. *Blair,* 133 U. S. 534. In that case it appeared that the St. Louis & Keokuk Railroad Co., being indebted among other persons to Fogg, transferred all of its property to the St. Paul, Hannibal & Keokuk Railroad Co., the new company agreeing among other things to assume, pay and satisfy all of the debts of the vendor. Thereafter the new company executed to Blair a deed of trust of all of its property, including the property so received from the old company, to secure bondholders. Fogg, claiming that the property of the old company was held in trust for its creditors, that this trust followed it into the hands of the new company and that the trustee of the bondholders took with notice, brought suit to enforce his claim on the property so transferred and sought priority over the deed of trust. And this con-

tention would have been unanswerable if it were a true trust.

The court said on page 538:

"The property of a railroad company is not held under any such trust to apply it to the payment of its debts as to restrict its use for any other lawful purpose it matters not how meritorious the demand of the creditor may be. He must obtain a lien upon the property of the company, or security in some other form, or he will have to take his chances with all other creditors to obtain payment in the ordinary course of legal proceedings for the collection of debts."

And on page 540 the court said:

"There is no evidence in the record before us that the parties who took the bonds issued by the St. Louis, Hannibal & Keokuk Railroad Company had any notice, actual or constructive, of the demand of the complainant. But if they had it would not have affected their rights. That demand was not then reduced to judgment and created no lien upon the property of the company, nor any restriction upon the company's right to use it for any lawful purpose."

And on page 541 with reference to the "trust fund" doctrine, the court said:

"That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence." See, also, *Hollins* v. *Coal Co.,* 150 U. S. 381.

If this doctrine only means, as stated by the court, that the property of the corporation must be appropriated to satisfy its creditors before it can be distributed to its stockholders; it needs no new principle of law to arrive at that result. It is true as to an individual as well as a corporation that the creditors have the first claim on the

assets and that no disposition of such assets for the bene-
fit of an insolvent debtor at the expense of his creditors
is permitted. But as to such debtor it is also held that
in the absence of statutory restrictions he can lawfully pay
one creditor to the exclusion of another, provided his
property is exhausted in paying the one. That one cred-
itor may attach his property by process of law and exhaust
it all to the exclusion of the other; and that the debtor
may do voluntarily what the law does for him involun-
tarily, namely, assign his property with preferences.

In doing this he uses his property for a lawful purpose.
The corporation doing the same thing uses its property
for a like lawful purpose and does not impinge on the
"trust fund" doctrine, because it does not stipulate for
any advantage to its stockholders until its creditors are
paid in full. And this is the current of authority. In
appellant's brief, Morawitz is quoted as to what he thinks
the law ought to be. But the same text writer states that
the law is as claimed by respondents.

In section 802 he says:

"In the absence of a statutory prohibition, a corpora-
tion has the same power of making preferences among its
creditors, in the distribution of its assets, as an indi-
vidual" 2 Mor. on Corp., § 802; see, also, Cook on Stock,
etc., § 691.

The opinion of the Supreme Court of the United States
is clearly shown in commenting on the case of *Rouse* v.
*Merchants' Bank*, 46 Ohio St. 493 (a case much relied on
by the appellants).

The court, by Mr. Justice Gray, said:

"In the recent case of *Rouse* v. *Merchants' Bank*, 46
Ohio, 493, that court, upon a similar state of facts, adjudged
that mortgages made by a trading corporation after it had
become insolvent, and had ceased to do business, to prefer
some of its creditors, were invalid and ineffectual against

its creditors generally, without regard to the question whether the mortgages were or were not parts of the same transaction as an assignment under the statute.

That decision it is true, proceeded in part upon a theory that the property of an insolvent corporation is a trust fund for its creditors in a wider and more general sense than could be maintained upon general principles of equity jurisprudence." *Smith Purifier Co.* v. *McGroarty,* 136 U. S. 241.

The ruling of the trial court on this proposition is supported by the current of authority. *Gould* v. *Ry. Co.,* 52 Fed. 682; *Allis* v. *Jones,* 45 Fed. 148; *Covert* v. *Rogers,* 38 Mich. 363; *Coats* v. *Donnell,* 94 N. Y. 168–178, 2 Kent's Com. 315 note; *In re File Co.* v. *Banking Co.,* L. R. 6 Ch. Ap. 83; *Whitewell* v. *Warner,* 20 Vt. 426; *Wilkinson* v. *Bauerle,* 41 N. J. Eq. 635; *Paper Co.* v. *Robbins,* 151 Ill. 588; *Ap. Keystone Watch Co.,* 161 Pa. St. 17; *Worthen* v. *Griffith,* 59 Ark. 562; *Duncombe* v. *Ry. Co.,* 84 N. Y. 190 (88 N. Y. 1); *Harts* v. *Brown,* 77 Ill. 226; *Buell* v. *Buckingham,* 16 Ia. 284; *Garrett* v. *Plow Co.,* 70 Ia. 697; *Smith* v. *Skeary,* 47 Conn. 47; *Bank* v. *Whittle,* 78 Va. 737; *Ashhurst's Appeal,* 60 Pa. St. 314; *Sargent* v. *Webster,* 13 Metc. (Mass.) 497; *Hollins* v. *Coal Co.,* 150 U. S. 381; *Warren* v. *Bank,* 149 Ill. 9.

Indeed, the appellants do not seem to be in a position to raise the question. The intervenor is proceeding on the theory that his writ of attachment gave him a lien on the property of the insolvent corporation to the exclusion of other creditors and is asking this court to decree him a first preferred creditor by process of law, while contending that the corporation could not voluntarily do what the law would do for it. *Walker* v. *Miller,* 59 Fed. R. 869.

*Second*—Can an insolvent corporation in making an assignment prefer its directors?

We are at a disadvantage in discussing this proposition,

because the trial court held it against us and for that reason vacated the preferences in favor of Strom and Rosenlof. And it is, therefore, not important to our case that such a power should be upheld. But as it has been sustained by many recent authorities we think it proper to cite them to the court. The principle on which all of these cases rest was laid down by Judge Dillon in *Buell* v. *Buckingham,* 16 Ia. 284 (85 Am. Dec. 521.) In that case the corporation conveyed substantially all of its property to its president in payment of a debt due him and in consideration of the assumption by him of some other debts due from the corporation. A creditor, the payment of whose claim had not been assumed, brought suit attacking the transfer on appellant's theory in this case. The court upheld the transfer, saying:

"Being an officer in the corporation did not deprive Buell of the right to enter into competition with other creditors, and run a race of vigilance with them, availing himself in the contest of his superior knowledge, and of the advantages of his position to obtain security for or payment of his debt. He has an advantage, it is true, but it is one which results from his position, and which is known to every person who deals with and extends credit to a corporation. This is one of the causes which has operated to bring corporate companies into discredit and may constitute a good legislative reason for giving priority to outside creditors. But the legislature must furnish the remedy."

To the same effect is Judge Taft's opinion, concurred in by Mr. Justice Jackson in *Brown* v. *Furniture Co.,* 16 U. S. App. 221. See, also, *Worthen* v. *Griffith,* 59 Ark. 562; *Garrett* v. *Plow Co.,* 70 Ia. 697; *Warfield* v. *Canning Co.,* 72 Ia. 666.

The decisions quoted by appellants from the Supreme Court of the United States are readily distinguishable by their special circumstances. As stated by Judge Taft in *Brown* v. *Furniture Co., supra,* with reference to these same decisions and on this same point:

, "All the decisions of the Supreme Court of the United States relied on and referred to as sustaining the view that the *bona fide* debt of a director of a corporation may not be paid in preference to the debt of some other creditor are cases where the directors were guilty of fraud in procuring the payment of their own debts by the fraudulent wasting of the assets to accomplish the preference."

*Third*—Is the preference in favor of the bank void because the directors endorsed the note held by the bank?

On this point no authorities are quoted in appellants' brief, but it is simply assumed that the preference of the bank was in legal effect a preference of the directors. The trial court held otherwise and the special circumstances of this case are material to the consideration of the question.

The bank held a note for $5,000, executed by the insolvent corporation, endorsed by its directors, who were accommodation endorsers simply, and secured by a mortgage on the real estate of the insolvent corporation. Appellants have abandoned their contention that this mortgage was invalid. On the trial the evidence showed that the mortgaged real estate at the time of the assignment was worth between $6,000 and $7,000, and there was no opposing testimony (Abst. pp. 16–18). The bank, having ample security, would have no object in waiting until the entire assets were turned into money in order to get a dividend, as an unpreferred creditor, but if not preferred would naturally foreclose its mortgage and eat up the surplus of security by costs and attorneys' fees, and such surplus would thus be lost to the general creditors. It was this condition which confronted the directors and their action, it must be admitted, was for the best interests of the general creditors. If the right to prefer the bank is denied it must follow:

(*a*) That a creditor of the corporation, whose debt is endorsed by a director thereof, is at a disadvantage, in respect to other creditors, in dealing with the corporation.

He can not run a race of diligence with them, but must always be in the last class and without any fault or fraud on his part.

(*b*) That the directors of a corporation who have loaned their credit to the corporation for the purpose of paying creditors, in making an assignment for the benefit of creditors cannot consider the best interests of the corporation and the creditors and so. arrange the preferences as to save costs and release assets, but in all cases must relegate to the last class the creditor holding their endorsements; although it be apparent that the property held as security by such creditor is more than sufficient to pay the debt and will certainly relieve them from any liability on their endorsements.

Such results seem opposed to both public policy and adjudged cases.

In the case of *County Court* v. *Ry. Co.*, 35 Fed. R. 161–167 the court said:

"Another point made by plaintiffs is that certain members of the board of directors of the Grafton & Greenbriar Company were personally interested in the action that was taken by the board on the 7th of April, 1887, for the reason that they were guarantors of some indebtedness of the Grafton & Greenbriar Company to some of its creditors other than the Baltimore & Ohio Company. The evidence shows that the Grafton & Greenbrier Company, being hard pressed, and having little or no credit, was compelled to negotiate loans for the further prosecution of its work and to relieve it from present embarrassment. To secure the loans desired it became necessary for some of the directors to become guarantors of the company for these loans otherwise it would have been unable to negotiate them. It is not an uncommon thing that the directors of an important improvement are compelled to lend their personal responsibility to a company in order to give it credit and secure means to carry on its operations. Many improvements would languish and die if this action upon the part of the directors was held by the courts of the country to be illegal, and to render them incompetent to act in that capacity.

In this case the directors were not primarily liable. The company had already exhausted its credit, and they only became guarantors to the creditors to the extent that money was borrowed upon their personal responsibility. And in the language of the supreme court of New York in the case of *Duncomb* v. *Railroad Co.*, 88 N. Y. 9: 'They were under no personal obligation originally, in contracting the debt, and no reason is shown why they were not justified in placing the company in a position to pay its indebtedness and to relieve it from its embarrassment.' Certainly there can be nothing wrong in a director securing a demand of this character against his company, but it does not appear that these directors did anything that other directors, who had no interest except the welfare of the company at stake, did not unite with them in." See, also, *Weihl* v. *Atlanta, etc., Mfg. Co.*, 37 Am. and Eng. Corp. Cas. 693. *Duncomb* v. *Railroad Co.*, 88 N. Y. 9; *Gould* v. *Ry. Co.*, 52 Feb. R. 680.

*Fourth*—Assuming that the preference to Strom was invalid, does it avoid the entire assignment?

The creditors were divided into three classes. The bank came first, the prime object being to save the assets from waste. In the second class came all others who had loaned money to the corporation for the purpose of paying its merchandise creditors. In the third class were all merchandise creditors.

Strom happened to fall in the second class; he had loaned money to the corporation. It will be perceived that he was not selected as an object of favor, he was simply placed in that class in which he belonged in accordance with the general scheme of the assignment. This would surely not be actual fraud, for the evil intent essential to such fraud, is wanting. But if his relationship to the corporation was such that the law, for fear of fraud and because of the opportunity to commit fraud, forbids the preference, it is a constructive fraud as distinguished from an actual fraud. *La Belle Iron Works* v. *Hill*, 22 Fed. Rep. 195–196; 1 Bigelow on Fraud, 10; *Buell* v. *Buckingham*, 85 Am. Dec. 519.

That such a fraud does not avoid the entire assignment has been settled by the supreme court of the United States. *Peters* v. *Bain,* 133 U. S. 688; *Denny* v. *Bennett,* 128 U. S. 496; 22 Wend. 482; 30 Kans. 353; Burrill on Assignments, 444–5.

*Fifth*—Does the preference to Rosenlof, it being in effect a preference to Strom, avoid the entire assignment?

It is strenuously urged by appellant that as the company owed nothing to Rosenlof, an attempt to prefer him was fraud in fact and avoided the assignment.

As to this contention it is necessary to examine the findings of fact (see finding 4, Abst. pp. 26–27). It appears that the company applied to Rosenlof for a loan of $500. Rosenlof refused to loan to the company, but agreed to loan to Strom. Strom had no desire to borrow the money, but to accommodate the company executed his note to Rosenlof, turned the money over to the company and received the company's note therefor. The company always considered that it owed the money to Rosenlof (Abst. p. 24) and there was substantial evidence to support the finding of the court "That in truth and in fact said $500 was due to John E. Strom and not to Neils Rosenlof, but that the said corporation and the said board of directors considered the same as a debt due Rosenlof in said class number two, without any intent to defraud any person whomsoever, or deceive any one, but with the intent to describe said debt in such a manner as to distinguish it." (Abst., p. 27.)

It will be perceived that the company did not undertake to swell the true amount of its debts by adding a fictitious one, but simply described a *bona fide* debt as due to Rosenlof, when in fact it was due to Strom.

An almost identical case was before the supreme court of the United States in *Davis* v. *Schwartz,* 155 U. S. 643–4–5. In that case the German American Bank took

from Schwartz, a failing debtor, a mortgage to secure a sum in excess of his debt to the bank. The excess was to secure a note to the president of the bank and one to its cashier, which were stated in the mortgage to have been assigned to the bank. These notes had not in fact been so assigned, nor were they then owned by the bank. The notes afterwards became the property of the bank. The mortgage was attacked for fraud and the court say, on page 644:

" Of both of these notes it may be said that whether they were actually owned by the bank or not, there is nothing to indicate that they were not just debts of John H. Schwartz. It would also seem that McConn's inclusion of these notes in the mortgage to the bank was made in good faith, supposing that he had the right to cover them by the same security he was taking in favor of the bank. While the fact that a mortgage is given for a larger amount than is due, is doubtless a suspicious circumstance, raising a presumption of fraud, and may under certain circumstances, avoid the whole mortgage, it will only have this effect when given wilfully, in connivance with the mortgagee, and with an actual design to impose upon and defraud the general creditors."

" In all such cases the question of good faith is one of fact, and a mere error of judgment will not be imputed as a fraud. The fact that the debt so included was a *bona fide* debt, and that the act of the mortgagee in so including it was subsequently affirmed by the creditors interested, will be strong evidence that no actual fraud was intended."

And the court therefore sustained the mortgage.

So in the case at bar, the debt was an actual *bona fide* debt. It became a question of fact whether or not the manner of its description was intended as a fraud. The trial court has found on sufficient evidence that it was not so intended. And there would seem no reason for vacating this finding, nor if it stands to avoid the entire instrument because of an innocent misdescription. We submit

that justice will be subserved by an affirmance of the judgment.

BARTCH, J.

In this case the plaintiff seeks to have declared null and void a certain deed of assignment and a conveyance of real estate made by the defendant Mt. Pleasant Equitable Co-operative Institution, and to have a receiver appointed, and the property of the said defendant disposed of according to the rights of its creditors, as they may appear. The facts material to this decision, as shown by the record, are that the defendant Mt. Pleasant Equitable Co-operative Institution was a mercantile corporation; that it became insolvent, and executed, by its board of directors, a deed of assignment to Peter Matsen, as assignee, on the 19th of January, 1894; that therein the defendant Mt. Pleasant Commercial & Savings Bank was made the first preferred creditor, for a debt of $5,000, evidenced by notes secured by mortgage on real estate of said insolvent corporation; that said notes were indorsed by all the directors of said corporation; that John E. Strom, a director, was a second preferred creditor, for $75, and Neils Rosenlof, for $500; that said corporation was not indebted to said Rosenlof, but that said John E. Strom borrowed $500 from Rosenlof, giving his individual note, and then loaned the same sum to the corporation, taking its note therefor; that under the charter of the corporation the directors had no authority "to sell real estate until first authorized so to do by a majority of the stockholders present at a meeting duly called," but had power, independent of the stockholders, to sell all other kinds of property belonging to the institution, not needful for the business thereof; that on August 1, 1892, the board of directors conveyed to defendant Christensen a certain piece

of real estate, without authority of the stockholders, but in March, 1893, upon reporting such sale to the stockholders, no objections were made thereto; that on January 6, 1893, the board caused a mortgage of certain corporate real estate to be made to the defendant bank without authority of the stockholders, but upon reporting the same to them no objection was made thereto; that the deed of assignment was made without the authority of the stockholders; that the intervener, Parsons, attached the property of the corporation, real and personal, including the land conveyed to Christensen, and in his complaint set up his attachment, and prayed that he have first lien on the property attached, and that the deed of assignment be set aside for the same reasons stated in the plaintiff's complaint, wherein, among other things, it was charged that the "indebtedness of said bank was made a preferred claim by the board of directors, with the unlawful and fraudulent intent of relieving the directors of any personal liability upon their indorsements of said note, and that the said director, John E. Strom, was made a second preferred creditor, with the unlawful and fraudulent intent on the part of said board of directors of said corporation of paying the indebtedness to the exclusion of the *bona fide* creditors." Upon trial of the cause the court, among other things, decreed that the "preference in favor of John E. Strom, one of the directors of said corporation, for $75, and the preference in the name of Neils Rosenlof, but in reality in favor of said John E. Strom, for $500, are void and unlawful, and that the said two preferences should be vacated, and that the said Strom (for said $75 and for said $500) be treated as if he had been named in the last class of said assignment, instead of the second class therein, and that, except as above stated, said assignment executed by the Mt. Pleasant Equitable Co-op. to said Peter Matsen is valid, and the said Peter Matsen, as assignee thereunder,

is entitled to the possession of the property assigned, and to all the property claimed by the said plaintiff and the said intervener by virtue of writs of attachment and writs of execution, and that the said claims of the plaintiff and intervener thereto are unfounded and void."

Under this state of facts, the appellants claim that the decree of the court was erroneous, and their first contention is that directors of an insolvent corporation, in the disposition of its corporate property, have no power to prefer one creditor over another. We do not deem it necessary to express an opinion on this point, because the controlling question in this case is whether directors who are general creditors of an insolvent corporation which has abandoned the object of its creation can, by deed of assignment, prefer themselves over other creditors. The contention of appellants is that the directors of an insolvent corporation have no such power, while the respondents maintain that such a corporation, in the absence of statutory restriction, may lawfully pay one creditor to the exclusion of another, if its property be exhausted in paying the one. This contention on the part of the respondents appears to be founded on the theory that at common law an individual and a corporation have equal rights regarding the disposition of their property; and as the former may, in the absence of statutory prohibition, transfer his entire property to one or more of his creditors, with the intent of giving preference to him or them over others equally meritorious, so an insolvent corporation, which has no longer any interest in its corporate property, has the right to make a preference, by deed of assignment, among its creditors, whoever such creditors may be, or whatever may be their relation to the corporate property or the corporation. In accordance with this view, it would follow that the directors, if they be also creditors of an insolvent corporation, which is no longer a going concern, and has

abandoned the objects of its creation, may distribute among themselves all its corporate property, to the exclusion of all other creditors, if the reasonable value thereof be not greater than their aggregate claims. We are unable to concur in this view of the law. It appears to be well settled by authority that the directors of an insolvent corporation, which has become financially embarrassed, and no longer intends to continue its business, cannot, by reason of their superior knowledge of the corporate affairs, secure any peculiar advantage to themselves, to the injury of other creditors. They are chosen by the stockholders, and are intrusted with the exclusive control of the property and management of the corporate business. This creates a fiduciary relation between them and the stockholders, and the corporate property becomes impressed with a trust, which must be administered for the exclusive benefit of the stockholders while the corporation is solvent, and for the benefit of the creditors when it becomes insolvent, and ceases to longer pursue the objects of its creation. This trust relation forbids that the directors should administer the corporate affairs for their own special benefit. Nor does it allow them to prefer one stockholder over another, or themselves as stockholders, in the distribution of dividends or of corporate property. This is so from the very nature of things, for otherwise no corporation could exist. If the directors could manage the business of the corporation in the interest of one or more stockholders, whom they might select, to the disadvantage of the remainder, the majority would be enabled to prey upon the rights of the minority, because it would be within the power of the majority to select officers to suit their own selfish ends, in fraud of the interests of the minority. This would not only be contrary to all our ideas of trust relations, but it would destroy the corporation itself, because contrary to the law of its corporate

existence, which says that all stockholders must share *pari .passu.* So the fiduciary relation existing between the directors and creditors when the corporation has become insolvent, and ceased to carry on its corporate business, forbids that the directors shall, by reason of their superior knowledge concerning the affairs of the corporation, gain any special advantage by preferring themselves over other creditors equally meritorious; and this is in full accord with the principle that he who has the management and possession of property for the benefit of others may not dispose of such property for his own special benefit, to the injury of any of the beneficiaries. *Koehler* v. *Iron Co.,* 2 Black, 715; *Manufactnring Co.* v. *Hutchinson,* 11 C. C. A. 320, 63 Fed. 496.

The contention of respondents in regard to the question under consideration is not only at variance with the trust relation existing between the directors and creditors of an insolvent corporation, but also with the salutary rules which courts of equity apply to such relations in other cases of trust; for it is well understood that in ordinary cases of trust the trustee can derive no special advantage, to the injury of his *cestui que trust,* by reason of his possession and control of the property. Nor is such contention in harmony with the known duties of directors to the corporate funds, which are to be managed for the interests of the stockholders, and, if debts be incurred, they stand pledged exclusively for the creditors until the debts are paid. In contemplation of law, the corporate property, in case of insolvency, constitutes a trust fund—*First,* for the payment of its creditors; and, *second,* for distribution among its stockholders, equally and ratably. If, therefore, a corporation dissolve, and, without first liquidating its liabilities, make distribution of its property among its stockholders, a court of equity will convert all holders of such property, except *bona fide* purchasers for value, into

trustees for the creditors, and compel such trustees to account, to the extent of the property so in their hands. In equity the creditors' claims constitute a lien upon the fund. The doctrine that the assets of a corporation constitute a trust fund for the payment of its debts was announced by Mr. Justice Story in *Wood* v. *Dummer*, 3 Mason, 311, Fed. Cas. No. 17,944, and it has been generally accepted and sustained by the highest authority. In that case the plaintiffs, as holders of bank notes, brought a bill in equity against the defendants, as stockholders, for payment of the notes, upon the ground of a fraudulent division of the capital stock of the bank by the stockholders. The eminent jurist, after discussing this subject with his usual ability and clearness, said: "To me this point appears so plain on principles of law, as well as common sense, that I cannot be brought into any doubt that the charters of our banks make the capital stock a trust fund for the payment of all the debts of the corporation. The billholders and other creditors have the first claim upon it, and the stockholders have no rights until all the other creditors are satisfied. They have the full benefit of all the profits made by the establishment, and cannot take any portion of the fund until all the other claims on it are extinguished." Again he says: "If the capital stock is a trust fund, then it may be followed by the creditors into the hands of any persons having notice of the trust attaching to it. * * * The doctrine of following trust funds into the hands of any persons who are not innocent purchasers, or do not otherwise possess superior equities, has long been established."

The doctrine here declared is clearly in accord with the rule that the directors of an insolvent corporation which has relinquished the pursuit of its corporate business have no power to prefer themselves over other creditors by general deed of assignment. The same doctrine was accepted

and announced by Mr. Justice Swayne in *Sanger* v. *Upton*, 91 U. S. 56, where he stated it as follows: "The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is the substitute for the personal liability which subsists in private copartnerships. When debts are incurred a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands until such demands are satisfied. The creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it *bona fide* for a valuable consideration, and without notice. It is publicly pledged to those who deal with the corporation, for their security." Mr. Justice Deady, in *Corbett* v. *Woodward*, 5 Sawy. 403, Fed. Cas. No. 3,223, said: "The great extent to which corporations have become the agency through which the business of the country is transacted, and its property is held and managed, makes it necessary that the salutary rules enforced by courts of equity in other cases of fiduciary relations should be rigidly applied to the numerous and important trust held by the managers of those organizations." *Curran* v. *State*, 15 How. 304; *Rouse* v. *Bank*, 46 Ohio St. 493, 22 N. E. 293; *Conover* v. *Hull* (Wash.) 39 Pac. 166; *Cole* v. *Iron Co.*, 133 N. Y. 164, 30 N. E. 847; *Sawyer* v. *Hoag*, 17 Wall. 610; 27 Am. Law Rev. p. 847; *Robins* v. *Embry*, 1 Smedes & M. 207; *Morgan Co.* v. *Allen*, 103 U. S. 498; *Olney* v. *Land Co.* (R. I.) 18 Atl. 181; *Roan* v. *Winn* (Mo. Sup.), 4 S. W. 736.

A perusal of the cases cited by counsel for the respondents shows that in many of them the facts were wholly different from those in this case, or the claims preferred were secured by mortgages or trust deed, or otherwise, while the corporations were solvent and pursuing the corporate business. No doubt a corporation may, if not for-

bidden by statute or charter, while solvent and endeavoring to accomplish the objects of its creation, mortgage and otherwise incumber its corporate property to secure its liabilities; and if the transaction be *bona fide* a court of equity will enforce such mortgage or other incumbrance, even after insolvency, at the suit of the creditor. So, in the absence of contrary legislation, a mortgage executed by a corporation, under embarrassed circumstances, to enable it to continue its business, will be sustained, if the whole transaction be in good faith; and a corporation may also, in like manner, obligate itself to a stockholder or director. But in such last cases a court of equity will very closely scrutinize the transactions, and, in case of a contest between a general creditor and a director or other managing officer, will require of the latter very strict proof of good faith, and that the mortgage or other incumbrance was not executed in expectancy of insolvency, for the purpose of securing an advantage over other creditors, and such transactions may be set aside on slight grounds. *Manufacturing Co.* v. *Hutchinson, supra; Oil Co.* v. *Marbury,* 91 U. S. 587; *Sweeney* v. *Sugar Co.* (W. Va.) 4 S. E. 431; *Williams* v. *Jackson County Patrons of Husbandry,* 23 Mo. App. 132. We think the great weight of authority is in favor of the rule that when an incorporation has become insolvent, and abandoned the objects for which it was created, its directors or managing agents cannot, by deed of assignment, prefer themselves over other creditors, so as to secure an advantage over them by reason of their official positions and superior knowledge concerning the corporate affairs. In such a crisis its property becomes affected with an equitable lien and trust for the benefit of all the creditors, and equity will not permit those who stand in relation of trustees to them to manage and dispose of the corporate property for the individual benefit of such trustees, regardless of the rights of the

*cestuis que trustent;* not even though they are not trustees, as is contended by the respondents, in the technical sense of that term, because, whatever may be the technical standing of such officers, they hold, in respect to the corporate affairs, a fiduciary relation to the creditors, which is controlled by equitable rules and principles. In Mor. Priv. Corp. § 787, the author says: "Directors of an insolvent corporation, who have claims against the company as creditors, must share ratably with the other creditors in a distribution of the company's assets. They cannot secure to themselves any advantage or preference over other creditors by using their powers as directors for that purpose. These powers are held by them in trust for all the creditors, and cannot be used for their own benefit."

In *Drury* v. *Cross,* 7 Wall. 299, the directors of a corporation, with the corporate property, provided for the payment of debts upon which they were liable as indorsers. Mr. Justice Davis, delivering the opinion of the court, said: "The transaction which this case discloses cannot be sustained by a court of equity. The contract of the directors of this railroad corporation was very discreditable, and without authority of law. It was their duty to administer the important matters committed to their charge for the mutual benefit of all parties interested; and, in securing an advantage to themselves not common to the other creditors, they were guilty of a plain breach of trust." So in *Corbett* v. *Woodward, supra,* Mr. Justice Deady said: "A director of an incorporation is a trustee of its property and assets for its stockholders and creditors, and it is contrary to the first principles of equity that he should deal with such property for his own advantage, and to their injury." In *Haywood* v. *Lumber Co.,* 64 Wis. 639, 26 N. W. 184, the lumber company was insolvent, and some of the directors were interested in a certain indebtedness of the company. The interested directors constituted

a majority of the quorum which voted to secure the indebtedness by giving a mortgage on the real property of the corporation. The mortgage was declared void because a majority of the directors voting that it be given were interested in the indebtedness, and therefore the securing of their antecedent claims constituted an unlawful preference. Mr. Justice Orton, delivering the opinion of the court, said: "In such case the authorities seem to be uniform that the directors and officers of the corporation are trustees of the creditors, and must manage its property and assets with strict regard to their interests; and if they are themselves creditors, while the insolvent corporation is under their management, they cannot secure to themselves any preference or advantage over other creditors." Cook, Stock & S. § 661; *Consolidated Tank-Line Co.* v. *Kansas City Varnish Co.*, 45 Fed. 7; *McGourkey* v. *Railway Co.*, 146 U. S. 536, 13 Sup. Ct. 170; *Corey* v. *Wadsworth* (Ala.), 11 South. 350; *Jackson* v. *Ludeling*, 21 Wall. 616; *Lippincott* v. *Carriage Co.*, 25 Fed. 577; *White, etc., Manuf'g Co.* v. *Henry B. Peters Importing Co.*, 30 Fed. 864; *Ogden* v. *Murray*, 39 N. Y. 202; *Bradley* v. *Farwell*, Fed. Cas. No. 1,779; *Hopkins' and Johnson's Appeal*, 90 Pa. St. 69; *Bliss* v. *Matteson*, 45 N. Y. 22; *Gibson* v. *Furniture Co.* (Ala.) 11 South. 365; *Bosworth* v. *Bank*, 12 C. C. A. 331, 64 Fed. 615; *Stout* v. *Milling Co.*, 13 Fed. 802; *Adams* v. *Same*, 35 Fed. 433.

In the case at bar the corporation was insolvent, and the directors executed a deed of assignment of its corporate property for the benefit of its creditors. All the directors were indorsers on certain notes, aggregating $5,000, for money loaned to the corporation, and the holder of these notes was made the first preferred creditor. Strom, one of the directors, was also preferred for $75, and one Rosenlof, to whom the corporation owed nothing, was preferred for $500; and the only excuse which the record

contains for making this last preference is that Strom borrowed $500 from Rosenlof, and then loaned the same sum to the corporation. The trial court refused to allow these last two preferences, but, after holding them void and unlawful, treated the claims as if they had been named in the last class, and sustained the deed of assignment. Now, if these preferences are "void and unlawful," why are they so? We answer, because they were made with intent to hinder, delay, and defraud the other creditors. The fact that the directors assert that they had no fraudulent intent in making preferences is immaterial, because they must be presumed to have intended the necessary and probable consequences of their own acts. When an assignment contains fraudulent preferences, that fact of itself indicates fraudulent intent, and, when an assignment is made with fraudulent intent, it is void as against all creditors who are, because of it, hindered, delayed, or defrauded in the collection of their claims. Comp. Laws Utah 1888, § 2838; *Bank* v. *Barker* (*ante*, p. 13), 40 Pac. 765; *Vernon* v. *Upson* (Wis.), 19 N. W. 400; *Lesher* v. *Getman*, 28 Minn. 93, 9 N. W. 585; *Gere* v. *Murray*, 6 Minn. 305 (Gil. 213); *Babcock* v. *Eckler*, 24 N. Y. 623; *Goodrich* v. *Downs*, 6 Hill, 438. As a general rule an assignment which is void in part is entirely void, and where it is fraudulent in fact it is void in toto. In this case the preference to Rosenlof was clearly fraudulent in fact, because he had no claims against the corporation. The fact that Strom had a claim against the corporation conferred no power upon the directors to prefer Rosenlof. A preference, being fraudulent in fact, will itself avoid the assignment. This court so held in *Coblentz* v. *Mercantile Co.*, 10 Utah, 96, 37 Pac. 242. Burrill, Assignm. § 352.

The other preferences in question were equally void, and fatal to the deed of assignment, because, under the law as we conceive it to be, the directors could not, through their

superior or exclusive knowledge of the corporate affairs, acquired by reason of their fiduciary relations, secure a benefit or advantage to themselves in derogation of the rights of other creditors. Notwithstanding the position assumed in some of the cases, that the rule which allows a private individual to prefer one creditor over another may be so enlarged as to apply to a private corporation, this will not, against the great weight of authority, so enlarge the rule as to permit the directors of an insolvent corporation to prefer themselves, by deed of assignment, over other creditors, whose claims are equally meritorious. We conclude, therefore, that the directors of an insolvent corporation, which has abandoned the objects of its creation, have no power to prefer their own claims over those of other creditors by voluntary deed of assignment. Having reached this conclusion, we refrain from expressing any opinion on the question of the validity of the mortgage to the Mt. Pleasant Commercial & Savings Bank, and of the deed to Christensen, because we think the parties should have an opportunity to present these questions again, as a new trial must be granted. Nor do we deem it necessary to discuss the remaining points raised in the record. The cause is reversed and remanded, with directions to grant a new trial.

MERRITT, C. J., and KING, J., concur.